733 F.2d 710
 11 Bankr.Ct.Dec. 1140, Bankr. L. Rep. P 69,859
 In re Eugene DALTON, d/b/a San Miguel Ranches, Debtor.
Eugene DALTON, d/b/a San Miguel Ranches, Petitioner-Appellant,
v.
UNITED STATES of America and Scott H. Phillips, Receiver for
Arizona Fuels Corporation, Respondents-Appellees.
 No. 83-2296.
 United States Court of Appeals,
Tenth Circuit.
 April 23, 1984.
 
 William D. Scheid, Law and Scheid, Denver, Colo., for debtor and petitioner-appellant.
 James J. Brown, Atty., Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Dept. of Justice, William C. Lengacher, Atty., Civ. Div., Dept. of Justice, Washington, D.C., Robert N. Miller, U.S. Atty., Denver, Colo., and Linda A. Surbaugh, Asst. U.S. Atty., Denver, Colo., with him on brief), for respondent-appellee U.S.A.
 Donald Gaffney, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for respondent-appellee Scott H. Phillips, Receiver, Arizona Fuels Corp.
 Before DOYLE and SEYMOUR, Circuit Judges, and SAFFELS, District judge.*
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 Involved herein is an effort by Petitioner/Appellant Eugene Dalton to persuade this court to review two bankruptcy orders which were issued by the United States District Court for the District of Colorado (hereinafter, Colorado District Court). The first of these was issued March 8, 1983. It withdrew reference of the pending bankruptcy proceedings from the United States Bankruptcy Court for the District of Colorado (hereinafter, Colorado Bankruptcy Court).[1] The second order, issued September 22, 1983, granted the motion of Respondents/Appellees United States of America and the Receiver (hereinafter the government) to transfer venue of the Dalton bankruptcy proceedings from the Colorado District Court to the United States District Court for the District of Arizona (hereinafter, Arizona District Court).
 
 I. FACTS
 
 2
 From a reading of the facts of the case it appears that Eugene Dalton, the debtor herein, does business as the San Miguel Ranches, and is the sole shareholder of Arizona Fuels Corporation (hereinafter, AFC). The underlying case involves an effort on the part of the government to realize on a debt which has been reduced to judgment in the amount of $38,000,000, which is owed by Dalton to the government. Presumably the effort to persuade this court to take jurisdiction is an effort to prevent a change of venue. It should be explained that this is an old case that has been in the Arizona courts for a long period of time; it has been subject to litigation for seven years. In its present posture the case involves separate proceedings in two different federal circuits, the Ninth, which includes the Arizona District Court, and the Tenth Circuit.
 
 
 3
 Back in 1981, following four years of litigation, the government, acting on behalf of the Department of Energy, obtained the mentioned judgment in a civil action in the Arizona District Court against AFC and its sole shareholder, Dalton. This judgment was affirmed by the Temporary Emergency Court of Appeals. On June 11, 1982, the government sought and obtained the appointment in the Arizona District Court of a receiver for all the assets of both Dalton and AFC. AFC is a Utah corporation with its principal asset being a large oil refinery in Fredonia, Arizona. Its corporate office is located at Midvale, Utah. Dalton does have some assets; one of these is the San Miguel Ranch, outside of Nucla, Colorado. Also he owns a condominium apartment in Salt Lake City, Utah and an airplane. Because the liability of AFC is based on violations of the Entitlements Program of the Emergency Petroleum Allocation Act, 15 U.S.C. Sec. 751, et seq., parallel administrative proceedings to determine the ultimate liability to the DOE were also instituted at the same time as the action in the Arizona District Court. These parallel administrative proceedings are not now the subject of appeal or review to this court.
 
 
 4
 Pursuant to the order of the United States District Court for the District of Arizona, the receiver assumed control of the assets of AFC. Included was the Arizona refinery. He also remains in possession and control of all AFC and Dalton's books and records, as well as the San Miguel Ranch.
 
 
 5
 The Colorado District Court became part of this controversy when Dalton filed in the Colorado Bankruptcy Court a petition seeking bankruptcy under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. Sec. 1101, et seq. It must be explained that there had not been a bankruptcy proceeding filed prior to this time; however, there was a receivership in Arizona. Dalton requested and the bankruptcy court ordered ex parte that the receiver appointed in the Arizona District Court turn over all of Dalton's assets to the Colorado Bankruptcy Court. This was pursuant to the statutory turnover provision of 11 U.S.C. Sec. 543(b). Dalton's allegation is that the San Miguel Ranch is the property of the bankruptcy estate and therefore subject to the Colorado Bankruptcy Court's jurisdiction. The government sought relief from the turnover order pursuant to 11 U.S.C. Sec. 543(d). Following a stay of the order and hearings on the government's request the Bankruptcy Court denied the request for relief and vacated the stay. The government timely filed an appeal from the turnover order in the Colorado District Court. Dalton moved for an appointment of a trustee in the bankruptcy court and on October 21, 1982, the Colorado District Court ordered a stay of the turnover order pending appeal.
 
 
 6
 The receiver in Arizona did not purport to operate as a trustee in bankruptcy and the Colorado District Court did not grant the motion of Dalton to appoint a trustee. The court was only willing to order a stay of the turnover pending an effort to appeal.
 
 
 7
 Presumably, the government's appeal from the Colorado Bankruptcy Court's turnover order continues to be pending and unresolved in the Colorado District Court. Nevertheless, on February 7, 1983, the government moved that the Colorado District Court withdraw reference of the bankruptcy proceedings from the Colorado Bankruptcy Court pursuant to the district court's Interim Rule. The government stated that withdrawal of reference would allow the Colorado District Court to exercise jurisdiction over both the bankruptcy matters and the pending appeal, and thereby permit granting of a change of venue motion that the government expected to file shortly.[2]
 
 
 8
 In opposition to the government's motion to withdraw reference, Dalton filed a response. Dalton also filed a motion for a partial withdrawal of reference, requesting the Colorado District Court to withdraw from the Colorado Bankruptcy Court all matters in dispute between Dalton and the government, but to retain jurisdiction over all other bankruptcy proceedings. The Colorado District Court granted the government's motion to withdraw reference, and on March 8, 1983, issued a minute order withdrawing reference of the bankruptcy matters. Dalton appealed the order to this court, but this court dismissed the appeal as premature on August 24, 1983.
 
 
 9
 The government moved the Colorado District Court to transfer the venue of the bankruptcy proceedings to the Arizona District Court. Following submission of briefs and exhibits by both parties the Colorado District Court ordered a transfer of venue to the Arizona District Court on September 22, 1983. On October 11, 1983, Dalton filed an appeal from that apparently interlocutory order in this court, claiming jurisdiction pursuant to Rule 6(a) of the Federal Rules of Appellate Procedure (discretionary appeals in bankruptcy proceedings). Subsequently, on October 19, 1983, Dalton petitioned this court to consider, in the alternative, its notice of request for appeal as a petition for extraordinary writ, alleging jurisdiction pursuant to 28 U.S.C. Sec. 1651 and Rule 21 of the Federal Rules of Appellate Procedure. On October 9, 1983, this court temporarily restrained transfer of records and papers to the Arizona District Court.
 
 II. THE DETERMINATIVE QUESTIONS
 
 10
 The basic issues in the case are whether this court lacks appellate jurisdiction to review the Colorado District Court's withdrawal of reference and transfer of venue orders, and if such jurisdiction is lacking, whether an extraordinary writ should issue.
 
 III. APPELLATE JURISDICTION
 
 11
 A. Summary Statement of Contentions.
 
 
 12
 Dalton advances two arguments in support of his contention that this court has jurisdiction to hear his appeals: (1) that Federal Rule of Appellate Procedure 6(a) permits a discretionary appeal to this court in bankruptcy proceedings, and (2) that the district court's orders, viewed separately or together, constitute final orders appealable pursuant to 28 U.S.C. Sec. 1291 because they satisfy the collateral order exception established in Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Seemingly, Dalton now recognizes the weakness of his position with respect to Rule 6(a), supra, because he now relies on Cohen to obtain the review that is now being decided. The government argues that both approaches are without merit. One other action of Dalton was to file a motion for partial withdrawal of reference requesting the Colorado District Court to withdraw from the Colorado Bankruptcy Court all matters of dispute between Dalton and the government, but to retain jurisdiction over all other bankruptcy proceedings.
 
 
 13
 B. Discussion of Applicable Legal Considerations.
 
 
 14
 It is generally true that appeals from district courts are pursuant to 28 U.S.C. Sec. 1291. This court recently held In the Matter of Glover, Inc., 697 F.2d 907 (10th Cir.1983) (per curiam), that "transition period" jurisdiction in bankruptcy proceedings over appeals from the district courts to the courts of appeal derives exclusively from Section 1291. This court further stated that Federal Rule of Appellate Procedure 6, which explicitly relies on Section 24 of the repealed Bankruptcy Act of 1898, was superseded by the 1978 Reform Act's jurisdictional provision which is codified in 28 U.S.C. Sec. 1293 and permits an appeal from final orders only. Id. at 908. Moreover, this court held that while Section 1293 does not become technically effective until April 1, 1984, Section 405(c) of the 1978 Reform Act provides interim jurisdiction until that effective date. There recently has been an extension of this interim jurisdiction by order of the Congress. However, in Matter of Glover, supra, we held that Section 405(c) was intended only to address appeals from bankruptcy courts and did not confer jurisdiction in this court over appeals from district courts. Id. at 909.
 
 
 15
 Therefore, in order to find that this court possesses jurisdiction to hear Dalton's appeals, it would have to first be found that the Colorado District Court's orders satisfy the collateral order exception to Section 1291 finality, established in Cohen, supra. Following review of the two orders and the applicable law it is clear that neither order, nor both orders viewed together, satisfies the collateral order exception. Consequently, they are interlocutory and not appealable at this time.
 
 
 16
 Section 1291 gives this court jurisdiction over final decisions of the district courts. To be final and appealable, the district court's judgment must end the litigation and leave nothing to be done except execute the judgment. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911; Matter of Glover, supra, at 909.
 
 
 17
 It is plain that the withdrawal of reference and transfer of venue orders merely involve the selection or designation of the forum in which final decisions will be ultimately reached. They do not finally end the litigation. It has been held that an order of reference by the district court to an adjunct or a magistrate is not a final judgment and is, therefore, not reviewable on appeal. Loral Corporation v. McDonnell Douglas Corporation, 558 F.2d 1130 (2d Cir.1977). Also well-established is that an order transferring venue of an action, even if the transfer is to a district in another circuit, is an interlocutory order and unappealable, except by certification under 28 U.S.C. Sec. 1292(b).[3] E.g., Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735 (1st Cir.1977); American Fidelity Fire Insurance Company v. United States District Court for Northern District of California, 538 F.2d 1371 (9th Cir.1976); D'Ippolito v. American Oil Company, 401 F.2d 764 (2d Cir.1968); see 9 J. Moore, B. Ward, and J. Lucas, Moore's Federal Practice Sec. 110.13 (1983-84 Supp. 2d ed. 1982). It is undisputed that the district court below has not issued a written statement to this court, pursuant to Section 1292(b), that immediate review of the two interlocutory orders here mentioned is advisable. Therefore, the withdrawal of reference and transfer of venue orders are technically unappealable; in short, they are interlocutory orders.
 
 
 18
 The federal appellate courts have consistently refused to rule that interlocutory venue transfer orders constitute appealable orders as a part of the Cohen collateral order exception.[4] The only exception has been narrowly construed by the courts to require that in order to come within the "narrow class" of decisions excepted from the final judgment rule, the order must first conclusively determine the disputed question; second, resolve an important issue completely separate or collateral from the merits of the action, and third, be effectively non-reviewable on appeal from a final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed. 351 (1978); Matter of Glover, supra, at 910. Dalton still maintains that his inability to secure review of the withdrawal of reference and transfer of venue orders in the transferee circuit results in an irretrievable loss of a collateral right and satisfies the requirements of Cohen.
 
 
 19
 The argument of Dalton does not persuade. The Second Circuit a long time ago held that the premise that Cohen applies to every order that cannot later be reviewed on appeal is false. D'Ippolito v. American Oil Company, 401 F.2d 764, 765 (2d Cir.1968). The Second Circuit reiterated this view in recent times. It stated that preliminary orders regarding forum are not appealable in the transferor circuit under the collateral order exception, "even though postponing review forces the would-be appellant to litigate in the forum he seeks to avoid, and creates the risk that the entire proceeding will be rendered nugatory." U.S. Tour Operators Association v. Trans World Airlines, 556 F.2d 126, 129 (2d Cir.1977). This circuit has long adhered to the same view, as evidenced by use of mandamus as the appropriate remedy to test the validity of a transfer order and in light of the rule that mandamus will not be considered where an appeal would lie. See Cessna Aircraft Company v. Brown, 348 F.2d 689 (10th Cir.1965); Solomon v. Bruchhausen, 305 F.2d 941 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499 (1963). Thus, if this court has jurisdiction to review the two orders which have been specified here of the Colorado District Court that jurisdiction lies exclusively in the issuance of an extraordinary writ. The appropriateness of the issuance of such writ in these facts must be now considered.
 
 IV. APPROPRIATENESS OF AN EXTRAORDINARY WRIT
 
 20
 A. Summary Statement of Contentions.
 
 
 21
 We must now ask whether Dalton has succeeded in showing that his right to issuance of a writ of mandamus is clear and undisputable. Dalton contends that there is an alternative to appellate review of the withdrawal of reference and transfer of venue orders. He contends that review is available under the All Writs Act, 28 U.S.C. Sec. 1651(a) and its implementing rule, Rule 21 of the Federal Rules of Appellate Procedure. Dalton principally argues that the Colorado District Court's order of transfer was entered without a hearing and is, therefore, appropriate for mandamus since it was violative of due process.
 
 
 22
 Dalton also offers another argument for review of the interlocutory orders, although he presents the argument in the context of appealability rather than review by mandamus. He asserts that the instant case is distinguishable from decisions holding transfer orders interlocutory and non-appealable, because here in addition to the transfer order two other appeals are currently pending and undecided: the Colorado Bankruptcy Court's withdrawal of reference order; and the Colorado Bankruptcy Court's Section 543 turnover order. These pending appeals will be extinguished when the case is transferred. Dalton contends that a party's appellate routes cannot be so easily destroyed and this court's appellate jurisdiction avoided by simply changing venue. Such an argument deriving jurisdiction to review an interlocutory order based on a concern to protect or preserve the reviewing court's jurisdiction is more properly an argument for an extraordinary writ and not for appellate jurisdiction. Because courts of appeal have long recognized that they may issue an appropriate writ in aid and preservation of both their then-existing and prospective jurisdiction over district courts, Dalton's argument for "protective review" will be considered in determining the appropriateness of mandamus. See Erie Bank v. United States District Court for the District of Colorado, 362 F.2d 539 (10th Cir.1966).
 
 
 23
 B. Applicable Standards.
 
 
 24
 It is well established and oft repeated that "mandamus is an extraordinary writ, and the requirements for its issuance are strict." United States v. Winner, 641 F.2d 825, 830-31 (10th Cir.1981), quoting State Farm Mutual Auto Insurance v. Scholes, 601 F.2d 1151, 1154 (10th Cir.1979). Courts have consistently held that while "a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances [for simple error] 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.' " Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam), quoting Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). Suffice it to add that issuance of writs of mandamus in aid of appellate jurisdiction has been limited strictly. It is limited to those exceptional cases where the inferior court acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power. See Will v. Calvert Fire Insurance Company, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); Winner, supra; Stell v. Savannah-Chatham County Board of Education, 318 F.2d 425 (5th Cir.1963). Moreover, in order to justify the invocation of this extraordinary remedy, the petitioning party has the burden of showing that its right to issuance of the writ is "clear and undisputable". Winner, supra, at 831; quoting Bankers Life & Casualty Company v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953).
 
 
 25
 C. Standards Applied.
 
 
 26
 We have stated previously that this court has long recognized mandamus to be an appropriate remedy to test the validity of a transfer order. Cessna Aircraft Company, supra. Whether the standards for issuance of the writ are satisfied in this case must be determined.
 
 
 27
 Five specific guidelines have been formulated by courts of appeal for determining the propriety of mandamus relief in particular cases. See Varsic v. United States District Court for the Central District of California, 607 F.2d 245, 250 (9th Cir.1979). First, the party seeking the writ has no other adequate means to secure the relief desired. Second, the petitioning party will be damaged or prejudiced in a way not correctable on appeal. Third, the district court's order constitutes an abuse of discretion. The Ninth Circuit Court of Appeals has phrased this third guideline as whether the district court's order is "clearly erroneous as a matter of law." "Clearly erroneous" and "abuse of discretion" are often used interchangeably by courts, including the Ninth Circuit Court of Appeals. See Anderson v. Air West, Inc., 542 F.2d 522 (9th Cir.1976). However, to avoid any confusion, we have phrased this third guideline in terms of abuse of discretion. Fourth, the district court's order represents an often repeated error and manifests a persistent disregard of federal rules. Fifth, the district court's order raises new and important problems or issues of law of the first impression. While these guidelines are not entirely conclusive, they are eminently reasonable and certainly provide a manageable framework for our determination.
 
 
 28
 The possibility of an appeal from the final judgment in the transferee circuit, even with the difficult burden of demonstrating prejudice there, will preclude relief by writ. Varsic, supra, at 251; Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co., 178 F.2d 866, 869-70 (2d Cir.1950). The remedy of a future appeal from a final judgment in the transferee court is inadequate and therefore justifies mandamus only when the appeal is totally unavailable or when it cannot correct extraordinary hardship because of the particular circumstances. Gulf Research and Development Co. v. Harrison, 185 F.2d 457, 460 (9th Cir.1950). No such extraordinary hardship is alleged in this case. Dalton merely alleges that review now is necessary to preserve the two previously mentioned pending appeals.
 
 
 29
 Thus, the argument is for protective review. We must hold that it is insufficient to satisfy the first two guidelines mentioned above as standards to be considered for issuing an extraordinary writ. It is to be noted that the appeal in the Colorado District Court from the Colorado Bankruptcy Court's Section 543 turnover order was instituted by the government; its pendency cannot be used by Dalton to support the request for mandamus. Indeed, the government's appeal may properly be deemed withdrawn as a result of the government's motion for transfer of venue. Dalton may not now assert the protection of this court's appellate jurisdiction over an allegedly pending appeal which was withdrawn by the government as a basis for mandamus. So Dalton's contention in this respect is not persuasive.
 
 
 30
 Extinguishment of the pending appeal of the Colorado District Court's order withdrawing reference from the bankruptcy court is also inadequate to justify mandamus. Dalton concedes that "to be realistic the venue order must not be divorced from the withdrawal since together they effected a single scheme." Brief of Debtor/Petitioner, at 16. Because as already stated the extinguishment of the appeal to this court from the district court's transfer order is not sufficient to justify mandamus, the extinguishment of the appeal from the withdrawal of reference order, too, necessarily fails to justify mandamus.
 
 
 31
 This court has held that determining whether to transfer venue of an action lies within the formal discretion of the district court and its determination should not be rejected unless the court of appeals determines that there is a clear abuse of discretion. Texas Gulf Sulphur Company v. Ritter, 371 F.2d 145, 147 (10th Cir.1967). All of the relevant factors were considered and weighed by the district court on the motion for change of venue. We are not called on to engage in a balancing of completing factors which bear upon convenience and the interests of justice. Northern Acceptance Trust 1065 v. Gray, 423 F.2d 653 (9th Cir.1970); Texas Gulf Sulphur Company, supra. It is not our function to substitute our judgment for that of the judge most familiar with the problem. The district court considered the applicable law in its transfer order and clearly set forth the reasons for granting the venue change. Dalton has failed to show that the district court abused its discretion. Accordingly, he failed to satisfy the third guideline for issuing a writ.
 
 
 32
 The fourth and fifth guidelines are intertwined somewhat and are subject to being considered together. The allegation is that mandamus is appropriate because the Colorado District Court violated Dalton's federal due process rights by transferring venue without convening a hearing. He cites the court's hospitality for considering petitions for mandamus in those cases where challenged transfer orders were entered without hearings. E.g., Roofing and Sheet Metal Services, Inc. v. LaQuinta Motor Inns, Inc., 689 F.2d 982 (11th Cir.1982); Swindell-Dressler Corporation v. Dumbauld, 308 F.2d 267 (3rd Cir.1962). Even though this argument is not clearly articulated, Dalton is evidently contending that mandamus should issue under these circumstances because the allegation of denial of due process raises issues and problems of peculiar public importance involving disregard of federal rights. Superficially this contention appears to satisfy the fourth and fifth guidelines for the issuance of mandamus; however, Dalton misreads the decisions he cites in support of his argument.
 
 
 33
 The assertion is that several courts have held that mandamus is particularly appropriate to review orders issued without a hearing. Citing Starnes v. McGuire, 512 F.2d 918, 929 (D.C.Cir.1974); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3rd Cir.1973); Swindell-Dressler Corp., supra, at 273-74. A close reading of the cited decisions reveals that none of the courts of appeal has held that a district court's failure to hold a hearing on a motion to transfer venue constitutes an abuse of discretion reviewable by mandamus. The contrary is true; the decisions evidence the appellate courts' explicit refusal to hold that a hearing is necessarily required on every transfer motion. E.g., Plum Tree, Inc., supra, at 756. Rather, the decisions stand for the proposition that "the failure to provide notice and an opportunity to be heard to the party opposing transfer [constitutes] a violation of due process and [can] be remedied by granting a writ of mandamus to secure vacation of the transfer order." Id. at 756 (stating what the Third Circuit Court of Appeals held in its earlier decision, Swindell-Dressler Corp., supra ).
 
 
 34
 From a review of the record it is plain that Dalton had extended to him a fair opportunity to be heard concerning his opposition to transfer. The government's motions for withdrawal of reference and transfer of venue were properly filed with notice to Dalton, and Dalton properly responded by filing substantial reply memoranda in opposition to the government's motions. Over seven months elapsed from the government's filing of its motion to withdraw reference to the Colorado District Court's transfer of venue to the Arizona District Court. The interim period involved an exchange of motions and memoranda between the parties and the court. There is no evidence that during that period Dalton requested oral argument or a hearing on any of the motions. Therefore, it is plain once again that Dalton's due process rights were not violated or even threatened by the issuance of the venue transfer order. Consequently, the fourth and fifth guidelines for issuance of a writ are not satisfied.
 
 V. CONCLUSION
 
 35
 It is clear that the circumstances of the instant case are not so extraordinary as to warrant review by mandamus. Dalton is not irrevocably and prejudicially precluded from securing relief by other means. The district court's order does not constitute an abuse of discretion, nor does it manifest a disregard for federal rights and it does not raise important questions of first impression. Indications are that Dalton is searching for a court that has not had extensive exposure to his problems, and at the same time is seeking to avoid facing up to the ultimate decision. Finally, we are convinced that this court lacks appellate jurisdiction to review the district court's withdrawal of reference and transfer of venue orders, because neither order is a final order of the district court nor does either order satisfy the collateral order exception established in Cohen, supra.
 
 
 36
 Hence, the appeal must be dismissed. We conclude that Dalton has also failed to satisfy the requisite bases for an extraordinary writ, and the petition for an extraordinary writ must, therefore, be denied.
 
 
 37
 It is so ordered.
 
 
 
 *
 Honorable Dale E. Saffels, United States District Judge, District of Kansas, sitting by designation
 
 
 [1]
 Reference of bankruptcy proceedings to the Bankruptcy Court was necessitated by the lapse of bankruptcy judges' jurisdiction when the Supreme Court refused to further stay the prospective application of its mandate in Northern Pipeline v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding that the 1978 Bankruptcy Reform Act's broad grant of jurisdiction to bankruptcy judges violated Article III of the Constitution). Therefore, reference of jurisdiction to the bankruptcy courts from the district courts was required to empower bankruptcy courts
 
 
 [2]
 The government contends that it was not until the emergency adoption of the Interim Rule by the Colorado District Court immediately after the December 24, 1982 expiration of the Supreme Court's stay of the effective date of its decision in Northern Pipeline that withdrawal of reference could be used as a viable method of avoiding further jurisdictional conflicts
 
 
 [3]
 The Colorado District Court exercised its authority to transfer venue pursuant to 28 U.S.C. Sec. 1475. However, there is a paucity of authority discussing the appealability of transfer orders under that section. Consequently in support of their arguments, both parties have cited authority addressing the appealability of transfer orders in civil actions pursuant to 28 U.S.C. Sec. 1404(a). Because both sections contain identical language authorizing transfer of venue "for the convenience of parties" and "in the interest of justice," the analogy is apposite
 
 
 [4]
 Apparently the only decision finding orders regarding transfer of venue appealable pursuant to the collateral order exception is United States v. Berkowitz, 328 F.2d 358 (3d Cir.1964). However, that case is distinguishable from the instant case. In Berkowitz the court orders denying transfer of venue effectively terminated the lawsuit because the defendant could not properly be served in the district court and the statute of limitation barred initiation of the action in another location. No such extraordinary circumstances are present in this action