**In re Edward S. PRUITT and Ida B. Pruitt.**

**Appeal of LANDMARK SAVINGS ASSOCIATION.**

No. 89–3688.

United States Court of Appeals, Third Circuit.

Submitted May 14, 1990.

Decided Aug. 9, 1990.

Rehearing and Rehearing In Banc Denied Sept. 21, 1990.

Edward T. Harvey, Hergenroeder & Heights, P.C., Pittsburgh, Pa., for appellant.

Edward S. Pruitt, Ida B. Pruitt, Verona, Pa., appellees, pro se.

Gary J. Gaertner, Chapter 13 Standing Trustee, W.D.Pa. Pittsburgh, Pa.

Before MANSMANN, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this complicated matter, the bankruptcy judge dismissed this case and the debtors appealed to the district court. The district court appeared to withdraw the reference of the case to the bankruptcy court and stayed state foreclosure proceedings on the debtors' home. This appeal concerns the propriety of the district court's withdrawal of reference order. Having concluded that we have jurisdiction, we will vacate and remand with instructions that the district court consider the appeal from the bankruptcy court and the debtors' motion for a stay of the state foreclosure proceedings during its pendency.

### I.

Landmark Savings Association is the mortgagee of real property owned by Edward and Ida Pruitt. In 1988, Landmark commenced mortgage foreclosure proceedings against them in the Court of Common Pleas of Allegheny County, Pennsylvania. Summary judgment was subsequently granted in favor of Landmark, which then proceeded to execute on the judgment.

On March 22, 1989, proceeding without counsel, the Pruitts filed a joint petition under Chapter 13 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Pennsylvania. As a result, a sheriff's sale of their home, scheduled in the state foreclosure proceedings, was stayed. 11 U.S.C. § 362(a) (1988). The Pruitts contended that a previous discharge under Chapter 7 eradicated their mortgage indebtedness, and therefore made no provision for payments to Landmark in their proposed plan of adjustment. For this reason, the bankruptcy judge rejected the proposed plan at a May 17 confirmation hearing but gave them an opportunity to amend the plan. On June 21, 1989,

the bankruptcy judge dismissed the case with prejudice for failure to file an amended plan that would cure Landmark's mortgage arrearage. With the stay provision now lifted, 11 U.S.C. § 362(c)(2)(B) (1988), Landmark scheduled a sheriff's sale of the Pruitt home for October 4.

On July 5, 1989, the Pruitts filed a notice of appeal in the Western District of Pennsylvania. While the appeal was pending, the Pruitts moved to enjoin Landmark's foreclosure proceedings on their home.[1]

On September 20, 1989, the district judge conducted a hearing in this matter. At the conclusion of the hearing, he stayed Landmark's foreclosure proceedings against the Pruitts.[2] The order did not articulate reasons for granting the stay; nor did it require security from the Pruitts.

On review, it is unclear whether the district judge acted in his appellate capacity or under his original jurisdiction, having first implicitly withdrawn the reference of the case to the bankruptcy court. Under the Bankruptcy Code, the district court may withdraw the reference of a bankruptcy case on its own motion for cause shown. 28 U.S.C. § 157(d) (Supp. V 1987). The order signed by the district judge does not specify under which authority he was acting. Therefore, we look to the court's statements at the hearing:

> THE COURT: Is there an appeal pending from what happened in Bankruptcy Court over in this Court?
>
> MR. PRUITT: Yes, sir, I filed an appeal.
>
> THE COURT: How can you people go ahead with this foreclosure in light of the fact that—isn't the stay still in place?
>
> MR. HARVEY: The automatic stay? No.
>
> THE COURT: Who lifted that?
>
> MR. HARVEY: Judge Cosetti.
>
> \* \* \* \* \* \*
>
> THE COURT: ....

I'll tell you what we're going to do. We're going to stay all proceedings, including the mortgage foreclosure, until we get an accounting. We're operating not on a permanent injunction request but operating as bankruptcy. We have the right to supervise what goes on over there in bankruptcy in this Court and we're going to exercise our power, and we're going to stay this, and we're going to put it in writing....

> MR. PRUITT: Yes, sir.
>
> THE COURT: And we'll set this up for a hearing down the line.
>
> MR. HARVEY: Your Honor, would the Court want—this mortgage began in 1974.
>
> THE COURT: I want an accounting from day one. From the time they took it out up to the time I'll set a hearing date. And we're exercising our bankruptcy jurisdiction at this point. And that's what we're going to do, stay this proceeding until we get into the root of what's going on here. I don't know what's going on here.
>
> \* \* \* \* \* \*
>
> MS. CHROMULAK: The brief, with respect to the appeal, would be due Monday.
>
> THE COURT: Well, there's—we're not— I'm accepting the appeal—I mean, I haven't concluded anything in regard to it. I'm just getting the groundwork here.
>
> MS. CHROMULAK: So, you'll give us time later then to complete the brief?
>
> THE COURT: Yes. If necessary, yes. In other words, I'm staying all proceedings, which we're including this mortgage foreclosure, because this gentleman appealed the Bankruptcy Judge's decision, as I understand it, to lift the stay.

Although we cannot be certain, it appears that the district court believed that he had taken control of this case ("I want an ac-

---

1. The bankruptcy judge had already denied a similar motion.

2. "And now, this 20th day of September, 1989, after consideration of the positions, contentions and pleadings, the Court hereby orders that all matters and proceedings in the above captioned matter are hereby stayed until further order of this Court; and it is further ordered that the Defendant Landmark Savings Association stay all foreclosure proceedings initiated against Plaintiffs in the Court of Common Pleas of Allegheny County, forthwith."

counting from day one.... And we're exercising our bankruptcy jurisdiction at this point.") Based on our review of the court's statements, we conclude the district judge withdrew the reference and acted through his original jurisdiction.

Although Landmark's notice of appeal to this court fails to question specifically the oral order withdrawing the reference or the written order granting the stay, its brief addresses both orders. Landmark challenges the first order because it was granted without a showing of cause, and the second order, which it classifies as an injunction, because it was granted without assessing security or articulating reasons. *See* Fed.R.Civ.P. 65(c), (d). Because we conclude the withdrawal—on whose authority this stay was premised—was inappropriate, we need not consider the stay; we will treat this appeal as one from the withdrawal of reference order only.[3]

## II.

Because of the unusual procedural posture of this case, a brief review of the jurisdictional framework in bankruptcy is appropriate. The district courts have "original and exclusive jurisdiction of all cases under title 11" as well as "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) & (b) (Supp. V 1987). "The filing of a petition for relief constitutes commencement of the title 11 case." 1 *Collier on Bankruptcy* ¶ 3.01[1][c][i], at 3–20 (15th ed. 1990). In addition, confirmation of a repayment plan proposed pursuant to Chapter 13 is a "civil proceeding[ ] arising under title 11, or arising in ... [a] case[ ] under title 11." *Id.* ¶ 3.01[1][c][iii], at 3–25 to 3–26, –[v], at 3–29. Therefore, the district court had subject matter jurisdiction.

Under 28 U.S.C. § 157(a) (Supp. V 1987), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges

for the district." By its General Order of Reference of October 16, 1984, the United States District Court for the Western District of Pennsylvania has provided for automatic reference to bankruptcy judges. *See, e.g., In re Crane Automotive, Inc.,* 98 B.R. 233, 233 (Bankr.W.D.Pa.1989); *In re Wheeling–Pittsburgh Steel Corp.,* 50 B.R. 969, 972–73 (Bankr.W.D.Pa.), *aff'd,* 52 B.R. 997 (W.D.Pa.1985), *vacated,* 791 F.2d 1074 (3d Cir.1986). On this authority, apparently, this case and its proceedings were referred to the bankruptcy judge.

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1) (Supp. V 1987). As noted above, this is a case under title 11 and involves a civil proceeding "arising under title 11, or arising in a case under title 11." In addition, because the non-exclusive listing of core proceedings includes "confirmations of plans," 28 U.S.C. § 157(b)(2)(L) (Supp. V 1987), the "core proceeding" requirement is satisfied. Under its authority, § 157(b)(1), the bankruptcy judge dismissed the case and proceedings.

Appeals from orders of a bankruptcy judge are governed by 28 U.S.C. § 158(a) (Supp. V 1987), which provides in part, "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." As we have noted, this case and its proceedings were referred to the bankruptcy judge under § 157. Dismissal with prejudice for failure to file a confirmable plan of repayment is a final judgment, order or decree. *Cf. Maiorino v. Branford Sav. Bank,* 691 F.2d 89, 90–91 (2d Cir.1982) (holding order that denied confirmation of Chapter 13 plan but did not dismiss matter interlocutory because another plan might

---

**3.** *See infra* note 6.

be confirmed). Therefore, appeal to the district court was properly taken by the Pruitts.[4]

### III.

Rather than address the appeal, the district court withdrew the reference and acting through its original jurisdiction, stayed the state foreclosure proceedings. In its appeal to this court, Landmark challenges the order withdrawing the reference to the bankruptcy court. As a threshold matter, we must determine whether we have jurisdiction of this appeal.[5] We believe that the traditional bases for jurisdiction do not apply but that mandamus is appropriate in this case.

### A.

■ The appeals provisions in the Bankruptcy Code do not apply here. Under 28 U.S.C. § 158(d) (Supp. V 1987), "[t]he courts of appeals ... have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) or this section." These subsections authorize appellate review of a bankruptcy judge's order by a district judge or a bankruptcy appellate panel. 28 U.S.C. § 158(a) & (b) (Supp. V 1987). As we have seen, however,. the order appealed from—the withdrawal of the reference— was issued through the district court's original jurisdiction. Because the district

court never acted under § 158(a), we cannot act under § 158(d). *United States v. Nicolet, Inc.*, 857 F.2d 202, 204 (3d Cir. 1988); *In re Amatex Corp.*, 755 F.2d 1034, 1038 (3d Cir.1985); *accord In re Powelson*, 878 F.2d 976, 979–80 (7th Cir.1989); *Collier, supra* ¶ 3.03[6][a], at 3–180.

■ Nor does our general jurisdictional statute grant us power to hear this appeal. Under 28 U.S.C. § 1291 (1982), we have jurisdiction of "appeals from all final decisions of the district courts." A "final decision" is one that " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). We recognize, however, that in the bankruptcy context, "[t]he concept of 'finality' for purposes of appellate jurisdiction should be viewed functionally." *Amatex*, 755 F.2d at 1039; *see Nicolet*, 857 F.2d at 205.

The rationale for viewing finality under a less rigorous standard in the bankruptcy area is clear. Bankruptcy cases frequently involve ·protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that

---

4. The venue aspect of this provision—"An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving," 28 U.S.C. § 158(a)—was also met here.

5. If the district judge had acted in his appellate capacity, 28 U.S.C. § 158(a) (Supp. V 1987), we would then consider whether the stay was tantamount to an injunction for purposes of appellate jurisdiction under 28 U.S.C. § 1292(a)(1) (1982), and whether that statute was applicable in bankruptcy. In a lucid but inconclusive analysis of the second question, one authority has made the following observations:

   [An] intriguing question presented by the language of § 158(d) is that it seems to provide appeal jurisdiction only as to decisions rendered by a district court or appellate panel on review of a bankruptcy judge. If a district court enters an order on its own, the only

apparent path of final judgment appeal lies under the general appeal provision of 28 U.S. C.A. § 1291.

   \*　\*　\*　\*　\*　\*

   The conclusion that § 1291 can support jurisdiction to review bankruptcy orders initially entered by the district courts opens up the prospect that § 1292(a)(1) and § 1292(b) also may be available.... If § 1291 must apply by virtue of the gap in § 158(d), there is no obvious reason for denying application of these interlocutory appeal statutes as well....

   If §§ 1292(a)(1) and 1292(b) are applied to orders entered initially by the district court, it is difficult to find in the language of these statutes any reason to deny application to orders entered by the district court on review of a bankruptcy judge.

   16 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3926, at 112–16 (Supp. 1990).

in other contexts might be considered interlocutory.

*Amatex*, 755 F.2d at 1039; *see, e.g., Nicolet*, 857 F.2d at 205; *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir.1988) (citing § 158(d)). Nonetheless, our relaxed view of bankruptcy orders cannot impart appellate jurisdiction without some vestige of finality. *See id.; In re Jeannette Corp.*, 832 F.2d 43, 45–46 (3d Cir.1987).

At least five courts of appeals have held that decisions to grant or deny motions for withdrawal of the reference are interlocutory rather than final. *Powelson*, 878 F.2d at 979 (7th Cir.1989); *In re Kemble*, 776 F.2d 802, 805–06 (9th Cir.1985); *In re King Memorial Hosp. Inc.*, 767 F.2d 1508, 1510 (11th Cir.1985) (per curiam); *In re Dalton*, 733 F.2d 710, 714–15 (10th Cir.1984), *cert. dismissed*, 469 U.S. 1185, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985); *see In re Chateaugay Corp.*, 826 F.2d 1177, 1179–80 (2d Cir.1987) (citing § 158(d)); *see also Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 559 (1st Cir.1986) (dicta). Although none of these decisions considered court-initiated withdrawal of the reference, we do not find that significant. *Cf. Chateaugay*, 826 F.2d at 1180 ("Although the distinction between the mandatory and discretionary portions of Section 157(d) surely dictates the scope of appellate review of the respective decisions, it is in no way pertinent to the question of whether either type of order is final or interlocutory.") Despite the functional view of finality that we accord orders for purposes of appellate review in bankruptcy, because this order merely determines the forum in which a final decision on the merits will be reached, we hold that it is interlocutory and unreviewable under § 1291.

■ Nor is the matter appealable under the collateral order doctrine. *See Cohen v.*

*Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under this exception to the finality rule of § 1291, an interlocutory order may be appealed if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225. The order must meet three conditions:

> First, the order must "conclusively determine the disputed question." *Coopers & Lybrand v. Livesay*, 437 U.S. [463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)]. Second, the order must "resolve an important issue completely separate from the merits of the action." *Ibid.* Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." *Ibid.* (footnote omitted).

*Gulfstream*, 485 U.S. at 276, 108 S.Ct. at 1137; *accord Pacor, Inc. v. Higgins*, 743 F.2d 984, 988 (3d Cir.1984). "If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception to § 1291." *Gulfstream*, 485 U.S. at 276, 108 S.Ct. at 1137.

■ This order fails the test. First, an order granting or denying withdrawal of the reference does not resolve an important issue. *See Chateaugay Corp.*, 826 F.2d at 1180 (order does not "conclusively determine any substantive issue ... [but] merely address[es] where that issue will initially be decided"); *Dalton*, 733 F.2d at 714–15 (same). Second, such an order remains reviewable upon final judgment. *Chateaugay Corp.*, 826 F.2d at 1180 (quoting *King Memorial*, 767 F.2d at 1510).[6]

---

**6.** Had we considered the stay order, we would have found it interlocutory and unappealable under § 158(d), § 1291 and the collateral order doctrine. *See Powelson*, 878 F.2d at 979–81.

The Bankruptcy Code makes no provision for appeal of interlocutory orders issued by the district court through its original jurisdiction. *See* 28 U.S.C. § 158 (Supp. V 1987). Nonetheless, 28 U.S.C. § 1292(a)(1) (1982) authorizes

courts of appeals to entertain appeals from "[i]nterlocutory orders of the district courts ... granting ... injunctions...." Authorities have noted the potential applicability of § 1292 to interlocutory orders of district courts in bankruptcy:

> There is no basis contained in the 1984 appellate provisions for an appeal of an interlocutory order from the district court (or appellate

### B.

▇ Review of this order, however, is not foreclosed. "[B]ecause the order may undermine the purposes and prescribed procedures of the Bankruptcy Act," we shall treat Landmark's appeal as a request for a writ of mandamus directing the district court to justify its order. *Powelson*, 878 F.2d at 981 (citation omitted).

▇ The All Writs Act—"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a) (1982)—empowers us to issue writs of mandamus. *United States v. Martinez–Zayas*, 857 F.2d 122, 127 (3d Cir. 1988). Because of "the undesirability of making a district court judge a litigant, and the inefficiency of piecemeal appellate litigation," *Mallard v. United States District Court*, 490 U.S. 296, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (citing *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976), & *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)), use of the writ is limited to extraordinary cases. Therefore, " '[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Id.* 109 S.Ct. at 1822 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)).

▇ Despite our general reluctance to grant writs of mandamus, we may do so when two conditions exist. First, "petitioners must show that they lack adequate alternative means to obtain the relief they seek...." *Id.* 109 S.Ct. at 1822 (citing *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124, & *Allied Chem.*, 449 U.S. at 35, 101 S.Ct. at 190); *accord Delgrosso v. Spang & Co.*, 903 F.2d 234, 237 (3d Cir.1990). Second, petitioners must " 'show[ ] that [their] right to issuance of the writ is "clear and indisputable." ' " *Mallard*, 109 S.Ct. at 1822 (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899))); *accord Delgrosso*, 903 F.2d at 237.[7]

In this case, the first condition is clearly met. Forcing Landmark to await a final judgment before addressing its appeal and the propriety of the district court's belated, sua sponte assertion of original jurisdiction

---

panel) to the court of appeals. When the district court is acting as a trial court, and section 158(d) does not apply, it is likely that section 1292(b) will apply, inasmuch as it has already been held that section 1291 applies to any appeal taken from the decision of the district court.

*Collier, supra* ¶ 3.03[6][d][ii], at 3–197; *see supra* note 5; *see also In re Feit & Drexler, Inc.*, 760 F.2d 406, 411–13 (2d Cir.1985) (assuming without discussion that § 1292(a)(1) applied to appeal from district court bankruptcy order, issued in trial capacity, that granted preliminary injunction).

Assuming § 1292(a)(1) applies in bankruptcy, it clearly does not afford jurisdiction of an appeal from a withdrawal of reference order because such an order merely determines the forum of the litigation. *See Kemble*, 776 F.2d at 805 n. 4 (although avoiding question as one not raised by parties, court characterized this basis of jurisdiction as "slender reed"). The stay order, however, is another matter. According to Wright and Miller, "An order that prohibits a party from pursuing litigation in another court is unquestionably an injunction for purposes of interlocutory appeal under 28 U.S.C. § 1292(a)(1)." *Federal Practice and Procedure, supra* § 3923, at 48 (1977). Thus, if court of appeals jurisdiction of interlocutory district court orders in bankruptcy can be predicated on § 1292(a)(1), then we would have jurisdiction of the appeal via the stay order. However, because we conclude the impropriety of the withdrawal—on whose authority this stay was premised—warrants a writ of mandamus, we can resolve this case without deciding this knotty jurisdictional question.

7. In what appears to be an illustration of the second condition, the Supreme Court has required that petitioners "demonstrate a 'clear abuse of discretion,' ..., or conduct amounting to 'usurpation of [the judicial] power....' " *Mallard*, 109 S.Ct. at 1822 (quoting *Bankers Life*, 346 U.S. at 383, 74 S.Ct. at 148, & *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945)).

**1168**

is not an "adequate alternative means" to obtain the relief it seeks. *Cf. Powelson,* 878 F.2d at 981–84 (in similar situation, finding authority to grant writ of mandamus—on order granting motion for discretionary withdrawal—without specifically considering availability of adequate alternative means); *but cf. Dalton,* 733 F.2d at 717 (order granting motion for discretionary withdrawal).

Thus, the availability of appellate jurisdiction and mandamus relief hinges on whether the district court may withdraw a reference to the bankruptcy court sua sponte, without showing cause, after its appellate jurisdiction has been invoked. Because resolution of the question requires the interpretation of legal precepts, our standard of review is plenary. *See United States v. Adams,* 759 F.2d 1099, 1111 (3d Cir.), *cert. denied,* 474 U.S. 906 & 971, 106 S.Ct. 275 & 336, 88 L.Ed.2d 236 & 321 (1985).

■ "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (Supp. V 1987). Thus, the statute requires in clear terms that cause be shown before the reference can be withdrawn. Here, the district judge gave no explanation.

■ Although "[n]othing in the legislation or otherwise indicates what may constitute cause," King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 696 (1985), one court of appeals has listed the following considerations:

The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985); *accord Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.,* 106 B.R. 367, 371 (D.Del.1989). We believe that even under these minimum standards, cause was lacking to withdraw the reference after appeal to the district court had been taken. Uniformity of bankruptcy administration will be jeopardized by taking this case from the bankruptcy court. Indeed, "the district court has, in effect, derailed the appellate process provided by statute." *Powelson,* 878 F.2d at 982. Moreover, allowing the Pruitts a second opportunity to adduce the facts will encourage forum shopping, dissipate the parties' resources, and prolong the bankruptcy process.

■ Finally, although not explicitly required for withdrawal sua sponte, at least one commentator has noted an implicit timing requirement. *Collier, supra* ¶ 3.01[2][e], at 3–63 ("it would seem that the district court would be unlikely to find cause to withdraw the reference at a late stage in a civil proceeding, *e.g.,* when trial is a short time away"); *cf. Carlton v. Baww, Inc.,* 751 F.2d 781, 788 & n. 10 (5th Cir.1985) (implying that after core proceeding is finally disposed of by bankruptcy court, district court must proceed under its appellate jurisdiction). Confronted with a similar situation, the Court of Appeals for the Seventh Circuit stated:

The timing of the court's withdrawal of the reference here, even if not improper, seems to be in conflict with the statutory objectives of utilizing the expertise of bankruptcy judges, reducing forum shopping and preserving the appellate processes provided by the Bankruptcy Act.

*Powelson,* 878 F.2d at 983 (citation omitted). We concur with this observation.[8]

It is clear that the reference was withdrawn without the requisite showing of cause. Therefore, Landmark has demonstrated the denial of a clear right and the

**8.** The following dates would be relevant to determining the timeliness of the withdrawal of reference. On March 22, 1989, the Pruitts filed their bankruptcy petition. On May 17, at the first confirmation hearing, the bankruptcy judge rejected their proposed plan of repayment. On June 21, at the second confirmation hearing, the bankruptcy judge dismissed the case and proceedings with prejudice. On July 5, the Pruitts filed their notice of appeal. On September 20, the district court effected the apparent withdrawal of reference.

propriety of a writ of mandamus in this case. We will grant the writ.

## IV.

■ Ordinarily, we would remand this matter to the district court with instructions that it make findings on cause to withdraw the reference. In this case, however, because the bankruptcy judge did all he could do and entirely disposed of the case, we believe cause to withdraw did not exist.[9] *See Powelson*, 878 F.2d at 983–84 ("We think that, if consent were not in the picture here, it would be clearly wrong for the district court to suspend the mandated appeal process as it has done in this case. Although the statute does not expressly forbid the course taken here, it appears to violate the intent of Congress as reflected in the statutory scheme. We do not see how a district court can simply abort an appeal, reject a confirmed plan and substitute an alternative 'more equitable' plan while leaving the appeal in limbo for an indefinite period."); *cf. Carlton*, 751 F.2d at 788 & n. 10 ("A referral from the district court to a bankruptcy judge does not forever divest the district court of original subject matter jurisdiction.... Of course, when a referred core proceeding is finally disposed of by a bankruptcy judge, the district court has appellate jurisdiction.") (citation omitted); *cf. also NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1258 (6th Cir.1985) (in interpleader action, withdrawal of the reference of involuntary petition filed against debtor and lifting of automatic stay, "without some appropriate action having first been taken in the bankruptcy case itself," was improper because it "short-circuit[ed] the orderly procedure for the administration of bankruptcy stays").

Therefore, we will vacate the withdrawal of reference and stay orders, and remand with instructions that the district court consider the Pruitts' appeal and their motion for a stay of the state foreclosure proceedings during its pendency.

Each side to bear its own costs.

9. We do not find it necessary to reach the issue set forth in Judge Mansmann's concurring opin-

MANSMANN, Circuit Judge, concurring.

While I concur with the majority in its result, I do not agree with the extent to which it would allow a district court to withdraw the reference sua sponte pursuant to 28 U.S.C. § 157(d) after the bankruptcy court has dismissed the bankruptcy petition. I interpret section 157(d) and the relevant caselaw to limit a district court's discretion to withdraw the reference from the bankruptcy court sua sponte not only by requiring "cause" to be shown but by placing a timeliness restriction on such withdrawals.

There is no question that in the case before us, the bankruptcy court's order of dismissal of the debtor's bankruptcy petition was final. The withdrawal of the reference by the district court occurred after an appeal was taken, but prior to any ruling on that appeal by the district court. It is the withdrawal of the reference *after* the dismissal of the bankruptcy petition and while the appeal is pending that is disturbing.

Congress has clearly erected a structure within the bankruptcy court system which allows for the district courts to supervise the bankruptcy courts in two different capacities. Withdrawal of the reference from the bankruptcy court and the reinstatement of the district court's original jurisdiction is one way the district court may exercise control over the proceedings in the bankruptcy court. 28 U.S.C. § 158(d). The second is through the appellate process established in section 157(a). For the reasons which follow, I believe that allowing the withdrawal of the reference to occur *at any time*, and especially after the appeal process has begun, would seriously disturb the statutory objective of "preserving the appellate processes provided by the Bankruptcy Act." *Matter of Powelson*, 878 F.2d 976, 983 (7th Cir.1989).

## I.

The jurisdictional relationship between the district courts and the bankruptcy

ion. For another view, see *Powelson*, 878 F.2d at 982.

courts has been narrowly defined by the Bankruptcy Amendments of 1984 in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (invalidated jurisdictional provisions of 1978 Act under which bankruptcy judges were permitted to decide state-law actions). The Amendments were intended by Congress, however, "to retain as much as possible of the bankruptcy court structure created by the 1978 Act, within the constitutional constraints spelled out in *Marathon*." *In re White Motor Corp.*, 42 B.R. 693, 697 (N.D.Oh.1984).

Unfortunately, the congressional legislative history shows little in regard to reconciling the appellate responsibilities of district courts over bankruptcy courts of section 157(a) and the withdrawal of the reference of section 157(d). *See, e.g., id.* at 699. Nevertheless, remarks by legislators indicate that although the bankruptcy courts are to be considered "adjuncts" of the district court, " 'CORE' bankruptcy cases continue to be determined by Article I bankruptcy judges...." *Id.* (quoting 130 Cong. Rec. S6085 (daily ed. May 21, 1984) (remarks of Sen. Heflin) (capitalization in the original). Congressional intent to preserve the bankruptcy court structure of the 1978 Act is evidenced by the Amendments, S.Rep. No. 55, 98th Cong., 1st Sess., and the legislative debate, constrained only by the jurisdictional limits set forth in *Marathon*. *Id.* Finally, during the Senate debate, a narrow reading of section 157(d) was suggested to the extent that "[t]he district court should refuse withdrawal if withdrawal would unduly delay administration of the case, *considering the status of the case*, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge." *Id.* at 700 (quoting 130 Cong.Rec. S6081 (daily ed. June 19, 1984) (remarks of Sen. DeConcini) (emphasis added).

Accordingly, it is evident that although Congress intended to avoid the jurisdictional problems evinced by *Marathon*, it did not intend for the indiscriminate withdrawal of the reference from the bankruptcy courts. Conversely, Congress intended to develop a means to reduce the caseload of the district courts, to create a specialized court to handle core bankruptcy proceedings efficiently and to preserve the specialized authority of the Article I bankruptcy judges over core bankruptcy proceedings while protecting the district courts' supervisory powers.

After carefully researching the issue of discretionary withdrawal of the reference sua sponte after dismissal of the petition by the bankruptcy court, I have found that there is little authority directly on point. There may be little because district courts do not withdraw the reference under these circumstances. Indeed the United States District Court for the Northern District of Illinois stated that it was only "common sense" that withdrawal must occur prior to dismissal of the bankruptcy proceeding. *In re Mandalay Shores Cooperative Housing Ass'n, Inc.*, 58 B.R. 586, 587 (N.D.Ill. 1986). The Court of Appeals for the Fifth Circuit has clearly implied that upon the final disposition of a core proceeding, a district court *must* proceed under its appellate jurisdiction. *Carlton v. Baww, Inc.*, 751 F.2d 781, 788 n. 10 (5th Cir.1985). This proposition in *Carlton* was recently noted by the Court of Appeals for the Seventh Circuit in *Powelson*. Indeed, the majority cites this with approval.

The Court of Appeals for the Fifth Circuit has recognized these same objectives espoused by Congress in suggesting that judicial economy should affect the decision to withdraw the reference as well as "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985). The Court of Appeals for the Seventh Circuit has also expressed concern about the withdrawal of the reference in circumstances similar to the facts here with the following language:

> The timing of the court's withdrawal of the reference here (after the final order, but prior to the resolution of the appeal),

even if not improper, seems to be in conflict with the statutory objectives of utilizing the expertise of bankruptcy judges, reducing forum shopping and preserving the appellate processes provided by the Bankruptcy Act.

*Powelson,* 878 F.2d at 983.

District courts have also commented on the need to restrict withdrawal of the reference from the bankruptcy courts. A district court's "own motion to withdraw the reference should be made as promptly as possible in light of the developments in the bankruptcy case or proceeding and when no substantial prejudice will result to any party." *In re American Community Services, Inc.,* 86 B.R. 681, 685–86 (D.Utah 1988) (citing *e.g. Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 728 (D.Kan. 1986); *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986); *In re Baldwin–United Corp.,* 57 B.R. 751 (S.D.Ohio 1985)). Certainly, the withdrawal of the reference once the petition has been dismissed would be prejudicial to a party relying upon the bankruptcy court's final judgment.

## II.

I recognize that 28 U.S.C. § 157(d) requires that motions made by parties to withdraw the reference must be "timely," but does not expressly require the court's own motion to be timely. "Conceivably, the court could withdraw the reference of a case or adversary proceeding at any time if 'cause' is shown." *In re American Community Services, Inc.,* 86 B.R. 681, 685 (D.Utah 1988) (citing *White Motor Corp.,* 704 F.2d at 265). I am not comforted in my unease with this assault to the system by the obvious fact that cause to withdraw the reference will be present in "only a narrow set of circumstances," *Id.* at 686, nor that permissive withdrawal lies within the sound discretion of the court, "predicated upon 'cause' shown on a case by case basis." *Id.*

One commentator has noted that "it would seem that the district court would be unlikely to find cause to withdraw the reference at a late stage in a civil proceeding,

*e.g.,* when trial is a short time away.... [A] motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'" 1 *Collier on Bankruptcy* ¶ 3.01[2][e], at 3–63 (15th ed. 1990). Interestingly, while Collier notes that the case-law disfavors withdrawal "when trial is a short time away," the circumstances here would appear to present a stronger argument against withdrawal at any time once an appeal has been taken, "in light of the developments in the bankruptcy proceeding." *Id.*

In a concurring opinion in *Powelson,* Senior District Judge Will, sitting with the Court of Appeals for the Seventh Circuit by designation, commented on this issue by asserting that "[o]nce a plan has been approved by a bankruptcy judge, unless there are extraordinary circumstances, I believe the Bankruptcy Act contemplates an appeal from that approval and not a withdrawal and substitution by the district judge of a de novo plan while ostensibly staying the appeal." *Id.* at 985 (Will, D.J., concurring). The majority makes a similar broad statement in footnote 9; however, I am at a loss to discover even one such "extraordinary case." On the other hand, Judge Will appeared to make this statement in regard to cases where "a plan has been approved by the bankruptcy judge," where the bankruptcy petition is still pending before the bankruptcy court. In the case before us, the petition is no longer pending since it has been dismissed. If we are to accept the language of *Powelson,* it is evident that we must resolve the issue before us on timeliness constraints.

## III.

In light of the foregoing, it is clear to me that withdrawing the reference once an appeal has been taken would only create confusion for all parties in bankruptcy proceedings, diminish the uniformity of bankruptcy administration, and evidence a total disregard for the bankruptcy appellate process established by section 157(a). *Holland,* 777 F.2d at 999. I believe a clear articulation of a timeliness restriction for

withdrawal of the reference sua sponte by the district courts would be. beneficial in avoiding prejudice to any party and to furthering "the statutory objectives of utilizing the expertise of bankruptcy judges, reducing forum shopping and preserving the appellate processes provided by the Bankruptcy Act." *Powelson*, 878 F.2d at 983.

Such a restriction should limit the withdrawal to any time prior to the dismissal of the matter by the bankruptcy court. If the matter has been dismissed, the district court must proceed in its appellate capacity under 28 U.S.C. § 158(a). The district court may, in its own discretion, withdraw the reference only after the bankruptcy court's order dismissing the matter has been reversed. This formulation would preserve the balance between appellate procedures established for the bankruptcy courts in section 158(a) and the procedures set forth in 28 U.S.C. § 157(d) for withdrawal of the reference. Furthermore, the district courts, though limited in terms of "when" withdrawal of the reference sua sponte may occur, would not be limited in their supervisory capacity of the bankruptcy courts since the reference may be withdrawn either prior to the dismissal of the matter by the bankruptcy court or after the reversal of the dismissal properly appealed to the district court under section 158(a).

Although the majority correctly held that the district court had failed to show cause for withdrawing the reference, I believe the reasoning must reach the timeliness of the withdrawal as well. Based on the above rationale, I concur with the majority's decision to vacate and remand the case for further disposition of Pruitt's appeal, not only for failing to show cause, but also for the lack of timeliness of the withdrawal post-dismissal.