In re COLUMBIA GAS SYSTEM, INC.,
Columbia Gas Transmission
Corporation, Debtors.

ENERGY DEVELOPMENT
CORPORATION,
Movant,

v.

COLUMBIA GAS TRANSMISSION
CORPORATION, Respondent.

Bankruptcy No. 91–803.
Civ. A. No. 91–557–JLL.

United States District Court,
D. Delaware.

Nov. 20, 1991.

Daniel F. Lindley of Duane, Morris & Hecksher, Wilmington, Del., H. Rey Stroube, III, Michael R. Waller, Jack J. Langlois, S. Margie Venus, and Mark C. Cowan of Akin, Gump, Hauer & Feld, Houston, Tex., and William J. Grealis, Daniel Joseph, C. Fairley Spillman of Akin, Gump, Hauer, & Feld, Washington, D.C., of counsel, for movant.

James L. Patton, Jr., and Laura Davis Jones of Young, Conaway, Stargatt, & Taylor, Wilmington, Del., Lewis Kruger, Laurence Greenwald, Robin E. Keller, and Winifred A. Sandler of Strook & Strook & Lavan, and Cravath, Swaine & Moore, New York City, of counsel, for respondent.

Kevin G. Healy and Eileen Ford of Childerston, Froehlich, Healy & Locke, Newark, Del., and Alan Kohler, Linda C. Smith, Veronica Smith and John F. Povilaitis of the Pennsylvania Public Utility Com'n, Harrisburg, Pa., for intervenor Pennsylvania Public Utility Com'n.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the Court's consideration of two gas purchase contracts between Columbia Gas Transmission Corporation ("CGT") and Energy Development Corporation ("EDC").[1] Under the contracts, gas produced offshore of Louisiana flows into the pipeline distribution systems of CGT, and CGT was obligated to purchase the gas within the contracts' determination of price and quantity.

On July 31, 1991, Columbia Gas System, Inc. and CGT filed petitions for reorganization under Title 11 of the United States Code. CGT listed EDC, who now seeks the withdrawal of reference, as the second largest unsecured creditor in the case with a claim valued over $34,000,000. CGT also filed an application for authorization to reject over 4,100 gas purchase contracts and to continue to purchase gas at prices lower than those listed in the purchase contracts and at a lower volume. See EDC Appendix ("App."), Docket Item ("D.I.") 133B at Exhibit ("Ex") A. On August 5, 1991, CGT filed a Designation of Rejected Contracts (Southwest Derived), which included the two contracts between EDC and CGT. See EDC App., D.I. 133B at Ex C. The Bankruptcy Court for the District of Delaware ("Bankruptcy Court") set a hearing date of August 22, 1991 and granted the interim relief CGT requested, which included authorization for CGT to reject the contracts and pay a reduced price for gas. See EDC App., D.I. 133B at Ex D.

EDC attempted to fight CGT's requests. EDC filed a motion seeking reconsideration, alteration, or amendment of the order ("Reconsideration Motion") and an objection based on the claim that the Bankruptcy Court lacked subject matter jurisdiction. See EDC App., D.I. 133B at Ex E & Ex F. On August 16, 1991, EDC filed a Motion to Withdraw Reference (the "Withdrawal Motion") with regard to the two contracts between EDC and CGT in this Court. This motion claims that withdrawal of reference is mandatory and that this Court must therefore remove the proceedings related to the contracts from the Bankruptcy

---

1. CGT's designation refers to the two contracts as (1) Contract No. LA 800080, Ship Shoal Blocks 247"D" and 248"F"; and (2) Contract No. LA 770038, Vermillion Blocks 161 and 162. EDC Appendix ("App."), Docket Item ("D.I.") 133B at Exhibit ("Ex") F, ¶ 3; see also EDC App., D.I. 133B at Ex I and Ex J (gas purchase contracts).

Court's jurisdiction. *See* EDC App., D.I. 133B at Ex G. EDC also filed a motion to stay the hearing in the Bankruptcy Court pending the determination of the Withdrawal Motion here. *See* EDC App., D.I. 133B at Ex H.

On August 22, 1991, the Bankruptcy Court denied the stay motion and the Reconsideration Motion and granted the relief sought by CGT. *See* EDC App., D.I. 133L, at Ex K, Ex L, & Ex M. The judge also issued an order granting the motion of the Pennsylvania Public Utility Commission ("Pennsylvania Commission") to intervene. One day later, the Federal Energy Regulatory Commission ("FERC") issued a public notice stating that Union Pacific Resources Company ("UPR") filed an emergency request to address the Bankruptcy Court's approval of CGT's rejection of the contracts. UPR had sought abandonment and blanket sales authority as well as the waivers or authority necessary to allow it to sell the gas committed to CGT under its rejected contract to other buyers. The public notice stated that it would consider whether to grant abandonment and blanket sales certificates to all producers under contracts which CGT had rejected and the Bankruptcy Court had approved. *See* CGT App., D.I. 133I at Ex C. On August 29, 1991, FERC granted authority under section 7(b) of the Natural Gas Act for all producers whose contracts were rejected to abandon sales of gas to CGT and resell the gas to other customers.[2] The agency refused to decide whether the Decontrol Act or other law had made the order unnecessary. CGT App., D.I. 133I at Ex E, p. A00028 n. 2.

EDC has filed three appeals in this Court challenging the orders of the Bankruptcy Court. EDC App., D.I. 133L at Ex N & Ex O. EDC later dismissed the appeal of the Bankruptcy Court's order denying EDC's Emergency Motion for Stay of Hearings Pending Determination of Motion to Withdraw Reference while continuing to assert its Withdrawal Motion in this Court. D.I. 4. The Court now considers the Withdrawal Motion under its original jurisdiction.

## II. ANALYSIS

### A. *The Statutory Framework.*

Under 28 U.S.C. § 157(a), the Bankruptcy Court derives its authority from the reference of the district court.[3] EDC contends that 28 U.S.C. § 157(d) ("Section 157(d)") compels this Court to withdraw the reference in the Bankruptcy Court regarding the contracts between EDC and CGT. Section 157(d) states:

> The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires a consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of Title 11 (the "Bankruptcy Code") is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material. *In re*

---

**2.** The FERC order states:

(A) To the extent necessary, the sellers of natural gas under the contracts which Columbia has been authorized to reject pursuant to orders of the United States Bankruptcy Court for the District of Delaware in Case Nos. 91–803 and 91–804 (and which Columbia has lawfully rejected) are granted authority under the Natural Gas Act to abandon sales of gas to Columbia, as of July 31, 1991.

(B) To the extent necessary that certificate authority to sell such gas for resale in interstate commerce is necessary under the Natural Gas Act, the sellers of natural gas under the rejected contracts are granted blanket certificates of public convenience and necessity to sell such gas to any person for resale in

interstate commerce, as of July 31, 1991. To the extent necessary, pregrant of abandonment of sales under the certificates issued by this ordering paragraph (B) is authorized upon termination of the contracts under which the sales are made.

(C) To the extent necessary, waiver of any applicable regulation is granted.

CGT App., D.I. 133I at Ex E, p. A00029.

**3.** The statute provides as follows: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

*Delaware & Hudson Ry. Co.*, 122 B.R. 887, 892 (D.Del.1991); *see also Hatzel & Buehler, Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 39 (D.Del.1989). These guidelines help to distinguish a required "consideration" of federal law outside the Bankruptcy Code from its "simple application." In the latter case, the withdrawal of reference is not mandatory. *See City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991).

The Natural Gas Act, 15 U.S.C. § 717, regulates the interstate sale of natural gas, including the movement of natural gas through interstate pipelines.[4] *Public Serv. Comm'n v. FERC*, 610 F.2d 439, 442–43 (6th Cir.1979). The law's purpose is to assure that adequate and reliable natural gas supplies are available to the public at reasonable prices. *California v. Southland Royalty Co.*, 436 U.S. 519, 523, 98 S.Ct. 1955, 1957, 56 L.Ed.2d 505 (1978). Under the Natural Gas Act, FERC must issue a certificate of public convenience and necessity in order to enter the interstate market. 15 U.S.C. §§ 717f(c), 717f(e). In addition, the gas must be sold at "just" and "reasonable" prices as exclusively determined by FERC. 15 U.S.C. §§ 717c(a), 717d(a). Under the statute no natural gas company[5] can abandon any service rendered pursuant to a certificate of public necessity and convenience without the permission and approval of FERC. 15 U.S.C. § 717f.

Reflecting a more skeptical view of the benefits of this type of regulation, Congress recently began to deregulate some of the controls over the industry. The Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. § 3301, and the Natural Gas Wellhead Decontrol Act of 1989 (the "Decontrol Act"), 15 U.S.C. § 3331, both removed regulatory controls on the gas market. The contracts at issue here were entered into prior to relevant legislative changes and submit the service obligations of EDC and CGT to FERC jurisdiction. Under the Decontrol Act, the service obligations are removed from FERC price controls at the time the contracts cease to apply to the sales of gas. The Decontrol Act states:

Expiring or Terminating Contracts[:]

In the case of natural gas to which no first sale[6] contract applies on July 26, 1989, but to which such contract ceases to apply after such date, part A of this subchapter shall not apply to any first sale of such natural gas delivered after the contract ceases to apply.

15 U.S.C. § 3331(f)(2). This event, the termination or expiration of the contracts, also removes FERC jurisdiction based on the contractual sale of gas.[7] 15 U.S.C. § 3431(a)(1)(E). Thus, after a contract ceases to apply to a sale of natural gas, the relations of the parties are no longer subject to price regulation or FERC's certificate and abandonment jurisdiction.

B. *The Timeliness of the Motion to Withdraw Reference.*

■ The intervenor, the Pennsylvania Commission, argues that EDC's motion is not timely because the original jurisdiction

---

4. The Natural Gas Policy Act of 1978 extended regulation to intrastate natural gas, provided maximum lawful prices for natural gas sales and deregulated certain sales. *See generally* 15 U.S.C. §§ 3301–3432. The Natural Gas Act's provisions with respect to the necessity of FERC's approval of rate changes and abandonment of service for interstate natural gas remain unchanged by the National Gas Policy Act.

5. "'Natural-gas company' means a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a(6).

6. "The term 'first sale' [includes] any sale of any volume of natural gas—to any interstate pipe-line or intrastate pipeline." 15 U.S.C. § 3301(21)(A)(i).

7. The statute states:

For purposes of section 1(b) of the Natural Gas Act [15 U.S.C. § 717(b) ], the provisions of the Natural Gas Act [15 U.S.C. § 717 et seq.] and the jurisdiction of the Commission under such Act shall not apply solely by reason of any first sale of natural gas which is committed or dedicated to interstate commerce as of July 25, 1989, and which is not subject to a maximum lawful price under part A of subchapter I of this chapter by reason of section 3331(f) of this title, effective as of the date such gas ceases to be subject to such maximum lawful price.

15 U.S.C. § 3431(a)(1)(E).

of the Court is no longer available now that the Bankruptcy Court has already entered orders that dispose of EDC's claims on the merits. In *In re Pruitt* the Third Circuit concluded that a district court's permissive withdrawal of reference sua sponte after the bankruptcy judge had disposed of the case violated the intent of Congress. 910 F.2d 1160, 1169 (3d Cir.1990). In light of the Bankruptcy Court's orders, the Pennsylvania Commission argues that the Court should only hear the case under its appellate jurisdiction and cannot hear the case under its original jurisdiction, which EDC has invoked with its motion. In this case, however, EDC filed the Withdrawal Motion on August 16, 1991, which was six days before the Bankruptcy Court disposed of EDC's claims. EDC App., D.I. 133B at Ex G. In *Pruitt* the district court effected the withdrawal of reference approximately three months after the bankruptcy court dismissed the case. 910 F.2d at 1168 n. 8. Under these circumstances, the Court finds the cases are distinguishable and that EDC properly invoked the original jurisdiction of the Court before the time for an appeal. The interests of efficiency support a decision to hear the case under original jurisdiction under these circumstances, for it would be wasteful to force the parties to argue the same issues on an appeal that the Court has an opportunity to address at this time. Furthermore, barring EDC's motion for being untimely would impose an unfair burden on a litigant that had made a motion to the district court before the case had been made final. The Court thus finds the Withdrawal Motion is timely under this Court's original jurisdiction.

### C. *The Jurisdiction of the Bankruptcy Court to Reject the Contracts.*

■ The Bankruptcy Court approved CGT's rejection of the contracts under 11 U.S.C. § 365(a). EDC argues that consideration of the rejection of the contracts intrudes on an area where FERC has exclusive jurisdiction under the Natural Gas Act. There is a recognized distinction, however, between contracts and service obligations. The United States Supreme Court has recognized that "there were two sources of price and supply stability inherent in the regulatory system established by the Natural Gas Act—the provisions of private contracts and the public regulatory power." *Sunray Mid–Continent Oil Co. v. Federal Power Comm'n*, 364 U.S. 137, 155, 80 S.Ct. 1392, 1403, 4 L.Ed.2d 1623 (1960) (citing *United Gas Pipe Line Co. v. Mobile*, 350 U.S. 332, 344, 76 S.Ct. 373, 380, 100 L.Ed. 373 (1956)). For instance, a gas company subject to the Natural Gas Act has a continuing obligation to provide services that may outlast a contract of sale. *Id.* at 156, 80 S.Ct. at 1403.

Accordingly, the Bankruptcy Court's jurisdiction over the contracts between EDC and CGT does not infringe on the jurisdiction of FERC over the service obligations of both parties. A federal court in another jurisdiction has relied on this distinction to take action on gas contracts, albeit in another chapter of the Bankruptcy Code. "By reason of the distinction to be made between the concept of the 'service' rendered by a natural gas company to the public and the underlying contractual relationship between parties which regulates their individual relationships, one to the other," the court concluded "it ha[d] jurisdiction to act upon those private contracts ... without infringing upon the jurisdiction of the Federal Power Commission under the Natural Gas Act." *In re Tilco*, 408 F.Supp. 389, 395 (1976), *rev'd on other grounds*, 558 F.2d 1369 (10th Cir.1977). The opinion's reasoning applies to the case before the Court today as well.

■ The FERC order issued on August 19, 1991 and which relates back to July 31, 1991 provides an alternate reason to deny the Withdrawal Motion. In its order FERC granted blanket authority for all producers previously bound to contracts with CGT to abandon their service obligations and to sell natural gas to others. *See supra* note 2. FERC accepted Columbia's rejection and referred to it in its order as "lawful." CGT App., D.I. 133I at Ex E, p. A00029; *see also* FERC Notice, CGT App., D.I. 133I at Ex C, p. A00016 ("Due to events in [CGT's] Bankruptcy Case ..., [CGT] is authorised to reject certain identified natural

gas contracts."). Even if FERC did have exclusive authority to allow rejection of the contracts, it implicitly approved of such a rejection.

EDC contends that FERC mistakenly assumed the rejection as a fact. If the Bankruptcy Court actually had infringed on FERC's jurisdiction, however, FERC would have the power to refuse to accept the Bankruptcy Court's order. EDC appears to attack the quality of FERC's judgment rather than persuasively limit the effect of the FERC order. Moreover, FERC's reference to the order of the Bankruptcy Court as "lawful" demonstrates consideration of the issue by the agency and casts doubt on EDC's argument that FERC merely assumed rejection.

Here acceptance of the Bankruptcy Court's approval of the rejection is implied in the FERC order. FERC's grant of permission for abandonment contradicts the terms of both contracts and only makes sense if the rejection of the contracts is deemed lawful. Implied legal conclusions in judicial opinions are to be given force in the Third Circuit. See Delgrosso v. Spang & Co., 903 F.2d 234, 240 (3d Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990) (legal conclusion on remand is binding if "implicitly disposed of by the appellate decision"). The same standard should apply to determine if a decision is implied in an agency decision. Thus, even if the Court had found that the Bankruptcy Court had intruded on FERC's jurisdiction, FERC's order approving the contracts' rejection as of the rejection date rendered the issue moot.

### D. The Jurisdiction of the Bankruptcy Court to Set Prices and Quantities at Which CGT Could Purchase Gas.

▪ The parties have debated whether the rejection of the contracts is a "termination" of the contracts that would remove the sales between these parties from FERC jurisdiction. The statute itself provides clear terms that resolve this dispute. Under the Decontrol Act, FERC's controls over price and other aspects of the sale

"shall not apply to any first sale of such natural gas delivered after the contract ceases to apply." 15 U.S.C. § 3331(f)(2). The contract "ceases to apply" to a sale when the contract's terms regulating the sale no longer bind the parties. In the words of the House Report, "[d]econtrol does not depend on the particular manner in which the contract expires, terminates, ends, lapses, or otherwise becomes nonbinding. At such time as the seller is no longer contractually obligated to continue delivering the gas, that gas is decontrolled." H.R.Rep. No. 29, 101st Cong., 1st Sess. 5, reprinted in 1989 U.S.Code Cong. & Admin.News 51, 54; see also S.Rep. No. 39, 101st Cong., 1st Sess. 7.

The Bankruptcy Code provides that the valid rejection of the contracts "constitutes a breach." 11 U.S.C. § 365. After rejection or breach, the contract "ceases to apply" to sales between the parties. R and O Elevator Co. v. Harmon, 93 B.R. 667, 671 (D.Minn.1988) ("Rejection ... terminates the obligation of the parties under the contract."); In re Rudaw/Empirical Software Prods. Ltd., 83 B.R. 241, 246 (Bankr.S.D.N.Y.1988) ("Rejection denies the right of the contracting creditor to require the debtor to perform its executory obligations."). The possibility of a claim for damages refers to an action for a past event, the breach of contract, and not the continued applicability of the contract. That situation applies here. Even though it was not legally necessary, the order of the Bankruptcy Court made it clear that neither CGT nor EDC was bound to the sell and buy from one another as required by the contracts. See EDC App., D.I. 133L at Ex M, p. A000225 ("the authorization of [CGT] to purchase gas from the producers under the Gas Purchase Contracts at the Index Price shall not in any respect obligate producers to continue to sell to [CGT], or [CGT] to continue to purchase from producers, at such Index Price").

### III. CONCLUSION

▪ The Court concludes that the Bankruptcy Court validly approved of CGT's rejection of the contracts and that this re-

jection constituted a breach that ended the contracts' application to sales of natural gas between the parties. Consequently, the jurisdiction of FERC to regulate these sales ended then. Because a substantial and material consideration of the Natural Gas Act, the Natural Gas Policy Act, and the Decontrol Act is not required to resolve the case, Section 157(d) does not provide for mandatory withdrawal. The Withdrawal Motion will therefore be denied.

An order will be entered in accordance with this Memorandum Opinion.