**In re CONTINENTAL AIRLINES, et al., Debtors.**

**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Air Micronesia, Inc., and the Continental/Air Micronesia Joint Venture, Defendants.**

**Nos. 90–932 to 90–984.**
**Civ. A. No. 92–37–JLL.**

United States District Court, D. Delaware.

March 11, 1992.

Schnee, Wilmington, Del. (John J. McAvoy and Anne D. Smith, White & Case, Washington, D.C., of counsel), and Carol Connor Flowe, John H. Falsey, James Y. Callear, Lawrence L. Landgraff, Steven A. Weiss, Russell G. Galer, Linda J. Schwimmer, and Steven A. Kerschenbaum of Office of Gen. Counsel, Pension Benefit Guar. Corp., Washington, D.C., for plaintiff Pension Benefit Guar. Corp.

James L. Patton, Jr., and Laura Davis Jones, Young, Conaway, Stargatt, & Taylor, Wilmington, Del. (Gary M. Ford, Terrence M. Deneen, and Lincoln Weed, Groom and Nordberg, Dennis G. Lyons, Arnold & Porter, Washington, D.C., and Zack Clement of Fulbright & Jaworski, Houston, Tex., of counsel), for defendant Continental Airlines, Inc.

David M. Fournier, Pepper, Hamilton & Sheetz, Wilmington, Del. (Geoffrey M. Kalmus, Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for defendant Air Micronesia, Inc.

Peter J. Walsh, Bayard, Handelman & Murdoch, Wilmington, Del. (Robert J. Rosenberg, James E. Brandt, and Bradford F. Englander, Latham & Watkins, New York City, of counsel), for Official Committee of Unsecured Creditors of Continental Airlines, Inc.

## OPINION

LATCHUM, Senior District Judge.

### I. FACTS AND PROCEDURAL HISTORY

Before the Court is an issue arising from the ongoing bankruptcy proceedings of Continental Airlines, Inc. ("Continental"), one of the nation's largest airlines. In 1987 Continental entered into an agreement ("Joint Venture Agreement") with Air Micronesia, Inc. ("AMI") to provide air service to certain areas in the Pacific.[1] The Bankruptcy Court for the District of Dela-

William L. Witham, Jr. and Norman Pernick, Prickett, Jones, Elliott, Kristol &

---

**1.** Specifically, the Joint Venture Agreement provided that Continental and AMI would "establish a stable, practical and long-lasting regime" to provide (1) services to the State of Hawaii, the Federated States of Micronesia, the Republic of Palau, the Republic of the Marshall Islands, the Territory of Guam, and Johnston Island

under the terms of the Joint Venture Agreement; (2) flights between such points, other than Hawaii, to other points outside of North America; and (3) flights between Hawaii and Japan or the Philippines. Complaint, Docket Item ("D.I.") 2 at ¶ 7 and Exhibit ("Ex.") A.

ware ("Bankruptcy Court") has treated the Joint Venture Agreement as an executory contract of Continental and has treated the assets of Continental used pursuant to the Joint Venture Agreement as assets of Continental's bankruptcy estate. Complaint, Docket Item ("D.I.") 2 at ¶ 38.

Continental Holdings, Inc. ("Continental Holdings") wholly owns both Continental and Eastern Airlines, Inc. ("Eastern"). *Id.* at ¶¶ 4 and 46. Eastern was a contributing sponsor of seven defined benefit pension plans covered by Title IV of ERISA ("Eastern Plans"). Eastern filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on March 9, 1989. The Eastern Plans terminated with underfunded benefit liabilities of approximately six hundred and ninety four million dollars. Memorandum ("Memo."), D.I. 7 at 4–5. The Pension Benefit Guaranty Corporation ("PBGC") is a United States Government corporation created by the Employee Retirement Income Security Act ("ERISA") to administer the pension plan termination insurance program created by the statute. *See generally* 29 U.S.C. § 1302. The PBGC is also a claimant in the bankruptcy proceedings in the Bankruptcy Court. Because Continental Holdings wholly owned Eastern at the times that the Eastern Plans terminated, PBGC asserts that Continental Holdings and all of its subsidiaries are jointly and severally liable to the PBGC for the Eastern Plans' underfunding. Complaint, D.I. 2 at ¶¶ 44–50. Prior to Continental's filing for bankruptcy, the PBGC entered into an agreement ("Settlement Agreement") that purported to release all statutory claims created by ERISA relating to the Eastern Plans. *See* D.I. 15 at Exhibit ("Ex.") A.

According to PBGC, the Joint Venture Agreement between Continental and AMI created an individual entity (the "Joint Venture") that may be held liable for the termination of the Eastern Plans. Although Continental and Continental Holdings are both currently in bankruptcy proceedings, the Joint Venture is not. PBGC fears that

Continental will soon sell assets used in the Joint Venture as part of the proceedings in the Bankruptcy Court. PBGC seeks a withdrawal of reference to escape the jurisdiction of the Bankruptcy Court for (1) a declaratory judgment that (a) the Joint Venture is an independent entity separate from Continental and is a member of the controlled group that is jointly and severally liable to the PBGC for the underfunded benefit liabilities of the Eastern Plans; and (b) PBGC has made demand upon the Joint Venture for payment of its joint and several claims and that if payment is not made, a lien on all property and rights to property of the Joint Venture therefore arises under ERISA; and (2) an injunction against the termination of the Joint Venture Agreement and against dissipating or otherwise encumbering the assets used in or necessary for the operation of the Joint Venture, or the proceeds of any sale of such assets, until the resolution of the action. Complaint, D.I. 2.

## II. ANALYSIS

### A. *Mandatory Withdrawal*

■ Under 28 U.S.C. § 157(a), the Bankruptcy Court derives its authority from the reference of the district court.[2] PBGC argues that this Court must withdraw the reference pursuant to 28 U.S.C. § 157(d) ("Section 157(d)"). Section 157(d) states:

> The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires a consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of Title 11 (the "Bankruptcy Code") is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the pro-

---

**2.** The statute provides as follows: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

ceeding is substantial and material. *In re Columbia Gas,* 134 B.R. 808, 810–11 (D.Del.1991); *Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887, 892 (D.Del.1991).

▨ As the party seeking withdrawal of the reference, PBGC bears the burden of demonstrating that a substantial and material consideration of nonbankruptcy law is necessary to resolve the case. *In re Michigan Real Estate Ins. Trust,* 87 B.R. 447, 459 (E.D.Mich.1988). PBGC bases its argument for mandatory withdrawal on an ERISA provision that provides that "any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group" may incur joint and several liability in any case in which an underfunded single-employer pension plan is terminated. 29 U.S.C. § 1362. ERISA then creates a lien in favor of PBGC upon the person's property and rights to property if that person, after demand, fails to pay the liability. 29 U.S.C. § 1368. PBGC contends that the question whether the Joint Venture is a "person" liable for the Eastern Plans as a contributing sponsor is a substantial and material question of federal law that must be addressed to resolve the case. PBGC points out numerous factors that allegedly establish that the Joint Venture constitutes an individual entity liable under ERISA [3] and argues that this determination involves a "substantial and material" interpretation of various provisions of ERISA and the Internal Revenue Code. The Court rejects PBGC's motion for mandatory withdrawal because PBGC has failed to show that it is necessary for the Court to address the ERISA questions raised in order to resolve the case.

First, PBGC has not shown that it is necessary to determine the status of the Joint Venture under ERISA in order to allocate the property of the estate. The statutory claims regarding the Joint Venture are immaterial unless the Joint Venture exists *and* owns the assets Continental proposes to sell. Withdrawal is not

foreclosed wherever an issue "affect[s] the administration or liquidation of the estate." *The Great Western Sugar Co. v. Interfirst Bank, Dallas, N.A.,* 1985 WL 17671 at 1 (N.D.Tex. Nov. 7, 1985) (Memo., D.I. 7 at Attachment 2). Nevertheless, where a determination of the property of the estate does not require the interpretation of a federal law outside of the Bankruptcy Code and would render the question raised moot, the statute does not require withdrawal.

The authority of bankruptcy courts to determine the property of the estate is clear. "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under [28 U.S.C. § 157(a)]." 28 U.S.C. § 157(b). The determination of each party's interest in the property is made by reference to the applicable state's law, *Butner v. United States,* 440 U.S. 48, 54–56, 99 S.Ct. 914, 917–919, 59 L.Ed.2d 136 (1979), and the Bankruptcy Code determines whether that particular interest may properly be included in the property of the estate. The determination of the property of the estate is one of the core proceedings arising under title 11. 28 U.S.C. § 157(b)(2). *See also* 11 U.S.C. § 541. As one bankruptcy court has stated, "The determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court." *In re Fisher,* 67 B.R. 666, 668 (Bankr.D.Colo.1986). *Accord In re Texaco, Inc.,* 109 B.R. 609, 610 (S.D.N.Y.1989).

PBGC has not persuasively shown that the existence of the Joint Venture as a separate entity is inextricably linked to the determination of the estate's property. Nor is such a conclusion self-evident. Consistent with their function, bankruptcy courts routinely determine whether assets used by a partnership or joint venture are property of the bankrupt partner or a joint venturer. *See, e.g., In re Olszewski,* 124 B.R. 743, 745 (Bankr.S.D.Ohio 1991); *In re*

---

**3.** In general the factors alleged to establish a separate business entail how the Joint Venture operates; how it represents itself to the public, its employees, and other businesses; and how it

has presented its status to obtain operating authority in its service areas. Complaint, D.I. 2 at ¶¶ 7–40.

*Jones*, 121 B.R. 122, 124–25 (Bankr. M.D.Fla.1990); *In re Fairfield Group Partnership*, 69 B.R. 318, 320 (Bankr. E.D.Tenn.1987). Without a persuasive showing that the property of the estate hinges on the legal status of the Joint Venture, the Court cannot assume that the determination of the property interests would have a different result. The Court therefore cannot conclude that the Bankruptcy Court is stepping into the realms of difficult federal law outside of the Bankruptcy Code in determining the property of the estate.

■ Second, PBGC has not persuasively shown that the Settlement Agreement does not bar their statutory claim against the Joint Venture, assuming such an entity exists. Contrary to PBGC's contentions, the Court finds that it must address the Settlement Agreement. A movant has not satisfied the statute "unless the resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The burden cannot be met if an agreement bars consideration of the federal issue raised.

While the Court does not decide the issue, the Settlement Agreement appears to bar the issue on its face. The Settlement Agreement provides "It is expressly agreed and understood that the payments by CTA under this Agreement are made in settlement and full satisfaction of any liability of CTA under section 4062(b) of ERISA and all other applicable Title IV liability to PBGC, including without limitation liability under sections 4042, 4062 and 4069." D.I. 15 at Ex. A, p. 18. The definition of "CTA" includes "any and all members of the CTA–Eastern Controlled Group except Eastern." *Id.* at Ex. A, p. 1. Assuming the Joint Venture does constitute a controlled group member liable for the Eastern Plans under ERISA, PBGC's statutory claims against the Joint Venture appear barred by the satisfaction of the Settlement Agreement.

■ The interpretation of contracts involving the United States or one of its agencies is generally governed by federal common law. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988). Nevertheless, the mere presence of a contract claim involving a federal agency is not sufficient to deprive the Bankruptcy Court of jurisdiction. This Court follows the interpretation of Section 157(d) that does not include federal common law within the phrase "laws of the United States," i.e. "federal laws." *See In re Continental Airlines, Inc.*, 60 B.R. 459, 465 (Bankr. S.D.Tex.1985). This interpretation construes the statute narrowly in keeping with its legislative history. *See In re White Motor Corp.*, 42 B.R. 693, 700 (N.D.Ohio 1984). Furthermore, since the interpretation of federal contracts follows traditional contract principles, *United States v. Seckinger*, 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970), it is consistent with the purpose of the statute. The Bankruptcy Court would not infringe on federal principles foreign to the Bankruptcy Code by interpreting or enforcing the Settlement Agreement. *See In re Haddad*, 68 B.R. 944, 953 (Bankr.D.Mass.1987) ("Bankruptcy courts have inherent power to enforce settlement agreements between parties.") Other courts have also interpreted the statute in this way, either explicitly or implicitly. *See, e.g., In re Continental Airlines*, 60 B.R. 459, 465 (Bankr.S.D.Tex.1985) ("The Court here interprets the phrase 'federal laws' to mean 'federal statutes.'"); *In re Continental Airlines, Inc.*, 57 B.R. 845, 850 (Bankr.S.D.Tex.1985) ("[F]ederal common law grounded in labor policy" does not justify withdrawal.); *In re White Motor Corp.*, 42 B.R. 693, 705–06 (N.D.Ohio 1984) (refusing to withdraw the reference for PBGC's contractual claim).

In addition, PBGC presents no substantial and material issue to the Court regarding the validity, application or enforceability of the Settlement Agreement under federal common law or any other body of law. On its face, the Settlement Agreement bars any statutory claims PBGC might have against the Joint Venture, and the Court has no reason to question its validity at this

time. Although it is a wholly owned corporation of the United States Government, PBGC must still show a substantial and material question of the federal law in question in order to withdraw the reference. *In re Quaker City Gear Works, Inc.*, 128 B.R. 711 (E.D.Pa.1991).

PBGC argues that any consideration of the Settlement Agreement necessarily involves a substantial and material question of federal law outside of the Bankruptcy Code because the Settlement Agreement refers to ERISA provisions and states that it is "governed by and construed in accordance with ERISA as in effect on September 17, 1990." D.I. 15 at Ex. A, p. 25. While ERISA's statutory provisions may be incorporated in some of the Settlement Agreement's terms, ERISA does not provide a framework to judge how or whether the Settlement Agreement applies. ERISA does give PBGC authority to enter into the Settlement Agreement. 29 U.S.C. § 1367. This question bears a close relationship to ERISA's statutory scheme, yet again the Court has been presented with no reason to consider this issue. The Settlement Agreement states that PBGC has authority to enter into the agreement, D.I. 15 at Ex. A, pp. 26, 28, and the Deputy Executive Director of PBGC appears to have signed the agreement. *Id.* at Ex. A, p. 30. Unless it is necessary for this Court to address a substantial and material issue concerning a specific ERISA provision as it applies to a specific set of facts, Section 157(d) does not mandate withdrawal.

The standard for a mandatory withdrawal of reference is not met where the Court need not address the question of federal nonbankruptcy law raised. Here, there are no "issues of first impression under ERISA ... in sharp conflict with competing provisions of the [Bankruptcy] Code." *In re Chateaugay Corp.*, 86 B.R. 33, 38–39 (S.D.N.Y.1987). Indeed, no federal provision yet appears to conflict with the Bankruptcy Code. As another court has stated in addressing the claims of PBGC in another case:

> For this Court to grant the motion to withdraw reference based on speculation about ERISA and IRC issues which may

or may not arise and of core Code proceedings would be inconsistent with the purposes underlying the very existence of the Bankruptcy Court and would encourage forum shopping in a manner Congress disdained when it sought to avoid "creating a multiplicity of forums for the adjudication of a bankruptcy case."

*In re White Motor Corp.*, 42 B.R. 693, 705 (N.D.Ohio 1984) (citations omitted).

**B.** *Permissive Withdrawal*

■ Under the statute's provision for permissive withdrawal, the Court may also withdraw "in whole or in part, any case or proceeding referred under [28 U.S.C. § 157], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The Third Circuit has recently stated the factors relevant for deciding whether to grant permissive withdrawal:

> The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (quoting *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)).

■ The Court finds that a discretionary withdrawal of reference would not achieve these goals. In this case, the resolution of other issues may prevent either this Court or the Bankruptcy Court from reaching the ERISA issue. Both the determination of the bankruptcy estate's property and the validity, application and enforceability of the Settlement Agreement are within the expertise of the Bankruptcy Court. It would therefore be prudent to use the expertise of the Bankruptcy Court in resolving these issues. *See id.* at 1168. Treating PBGC differently in such a case may also interfere with the uniformity of bankruptcy administration and encourage forum shopping in future cases because it would set a precedent for permitting withdrawal

where the federal statutory issue involved may not be reached. Were this to be the case, creditors in the future may be tempted to seek withdrawal with hypothetical federal statutory claims in order to escape anticipated unfavorable results in the bankruptcy courts. *See In re White Motor Corp.*, 42 B.R. 693, 705–06 (N.D.Ohio 1984). Finally, the withdrawal may slow down the bankruptcy process or create confusion. The Bankruptcy Court would need to delay any action relating to the assets of the estate until this issue is resolved by this Court. For these reasons, the Court finds no cause to withdraw the reference as a matter of judicial discretion.

## III. CONCLUSION

The Court concludes that PBGC has failed to carry its burden of demonstrating that a consideration of a federal law is required for the resolution of the case, which is necessary for establishing a mandatory withdrawal of reference. The issue presented may plausibly be disposed of on other grounds that do not present a substantial and material question regarding the consideration or an interpretation of federal laws under Section 157(d). In addition, no cause exists to justify the withdrawal of reference as a matter of the Court's discretion. For the foregoing reasons, the Motion for Withdrawal of Reference will be denied.