In re HOMELAND STORES, INC., and
Homeland Holding Corporation,
Debtors.

HOMELAND STORES, INC., reorganized
debtor, Plaintiff,

v.

Gene BURRIS, Bobby D. Crumby, Aurbin
T. Dickey, Vernon Hodges, Ray R.
Wooster, James Phillips, Weldon Shar-
on, William J. Carlson, D.V. Coleman,
Joseph K. Peery, James L. Sneyd, Gary
Huddleston and John Rentschler, Trust-
ees of the South Central United Food &
Commercial Workers Unions and Em-
ployers Health & Welfare Trust, Defen-
dants.

Civil Action No. 96–506 MMS.

United States District Court,
D. Delaware.

Jan. 24, 1997.

James L. Patton, Jr., Scott D. Cousins, and Brendan Linehan Shannon, of Young, Conaway, Stargatt & Taylor, Wilmington, DE (Judy Hamilton Morse, Kenni B. Merritt, Roger A. Strong, and William H. Hoch, of Crowe & Dunlevy, P.C., Oklahoma City, OK, of counsel), for plaintiffs.

Norman L. Pernick and Mark Minuti, of Saul, Ewing, Remick & Saul, Wilmington, DE (Richard P. Carr and Mark L. Metz, of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, s.c., Milwaukee, WI, of counsel), for defendants.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Homeland Stores, Inc. ("Homeland"), along with its parent company, filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). After the reorganization plan was confirmed, Homeland filed an adversary proceeding against the trustees (the "Trustees") of the South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust ("the South Central Plan" or "the Plan"). The

adversary proceeding centers on the extent of Homeland's obligations under the South Central Plan.

Under 28 U.S.C. § 157(a), the Bankruptcy Court can hear proceedings arising under Chapter 11 upon reference of the district court. Accordingly, Homeland's Chapter 11 proceedings were referred by the United States District Court for the District of Delaware to the Bankruptcy Court. The Trustees now seek to withdraw the adversary proceeding from that reference.[1] For the reasons below, the Court will withdraw the adversary proceeding from the reference of the Bankruptcy Court.

## II. FACTUAL BACKGROUND

The South Central Plan was created in 1976 to provide a uniform health and welfare plan for the eligible employees of those employers who chose to participate in the Plan. Amended Complaint filed in Bankruptcy Court ("A.C.") at ¶ 9. Homeland became a participating employer in 1992. *Id.* The Trustees administer the Plan. A.C. at ¶ 2. Both Homeland and the Trustees agree the South Central Plan is an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1).

Several documents delineate the responsibilities of the Trustees and employers who choose to participate in the South Central Plan. *See* A.C. at Exhibits ("Exh.") A–D. The South Central Plan worked on a "skip month" basis; that is, pursuant to a provision of the Employer Participation Agreement, Homeland made contributions to the Plan "on or before the 20th day of each month following the month in which the work determining the contributions was performed." A.C., Exh. B at ¶ 5. These contributions would secure benefits for Homeland employees for the following month. A.C., Exh. D at ¶ 2.3(a)(i). For example, Homeland's contributions made on March 20, 1996 would procure coverage for employee claims made in April of 1996 and would be based on hours worked by employees in February of 1996.

---

1. Homeland had also filed a motion to stay. Docket Item ("D.I.") 2. At argument, both parties agreed the motion to stay was moot.

Homeland filed its chapter 11 petition on May 13, 1996. A.C. at ¶ 3. The court confirmed a plan of reorganization for Homeland on July 19, 1996. A.C. at ¶ 4. Under the plan, Homeland was to establish its own self-funded health plan; no longer would its employees be covered under the South Central Plan. *Id.* Accordingly, Homeland apprised the Trustees it would no longer be a participating employer as of September 30, 1996. Homeland anticipated its last contribution would be due August 20, 1996.

The Trustees, however, took a different view. They informed Homeland—for the first time, asserts Homeland—of amendments to the Plan rules and regulations. The amendments provide if a participating employer withdraws from the Plan for reasons other than a bona fide labor dispute, that employer "becomes a nonparticipating employer as of the close of the last day that Employees record hours on which the Employer contributed to the Fund. . . ." A.C., Exh. D at Amended Rule ¶ 2.3(c). According to the Trustees, this meant Homeland would have to make additional contributions in September and October to ensure benefits for employees through September 30, 1996—the date of Homeland's withdrawal from the Plan. The estimated expense to Homeland was an additional $750,000 to $1 million.

Unsurprisingly, Homeland regarded the Trustees' gloss on the Plan as unduly uncharitable. Homeland directed the Trustees to several provisions of the Plan & Trust Agreement. One provision grants the Trustees the power to adopt rules and regulations, but only so long as they "do not modify or increase the burdens or obligations of any Employer under the terms of its collective bargaining agreement." A.C., Exh. A at ¶ 7.3(n). Another clause provides "[n]o amendment shall be adopted which alters the basic purpose of the Plan … [or] increases the burdens or obligations of any Employer except to the extent provided herein or permitted in its collective bargaining agreement[.]" A.C., Exh. A at ¶ 10.2. Finally,

there is a provision in Homeland's Participation Agreement which forbids any attempt by the Trustees "to increase the amount of contributions required to be paid by [Homeland] pursuant to its collective bargaining agreement" or "to bind [Homeland] in any manner inconsistent with the terms of its collective bargaining agreement or the Trust Agreement." A.C., Exh. B at ¶ 4. These provisions, argues Homeland, shield it from any attempts by the Trustees to collect contributions for September and October of 1996.

The parties were unable to bridge the yawning gap in their respective interpretations of the South Central Plan. Homeland placed a little over a half of a million dollars in escrow; in exchange, the Trustees ensured eligible employees would remain covered by the Plan until September 30, 1996. Homeland filed an adversary action on September 6, 1996. The Trustees answered and counterclaimed for Plan contributions from July to September 1996. Homeland later filed an amended complaint, alleging breach of contract and violations of the Labor Management Relations Act (the "LMRA"),[2] and seeking a federal common law right of restitution, declaratory relief and injunctive relief. The Trustees did not answer the amended complaint. Instead, they filed a motion with this Court, seeking to withdraw the adversary proceeding from the reference of Homeland's Chapter 11 proceedings to the Bankruptcy Court.

## III. DISCUSSION

Under 28 U.S.C. § 157(a), the Bankruptcy Court derives its authority from the reference of the district court.[3] 28 U.S.C. § 157(d) governs the withdrawal of a reference to the Bankruptcy Court. 28 U.S.C. § 157(d) ("Section 157(d)") states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause

---

**2.** At argument, counsel for Homeland stated Homeland would drop its LMRA claim.

**3.** 29 U.S.C. § 157(a) provides:

> Each district may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

■ Thus, section 157(d) envisions two types of withdrawal of a reference to the Bankruptcy Court: (1) mandatory withdrawal, and (2) permissive withdrawal. The Trustees contend that withdrawal of the adversary action under either provision is appropriate. As the parties seeking withdrawal of the reference, the Trustees bear the burden of establishing withdrawal is appropriate. *In re Continental Airlines,* 138 B.R. 442, 445 (D.Del.1992).

### A. Mandatory Withdrawal

■ To reiterate, the second sentence of section 157(d) provides "[t]he district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires a consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." This district has deemed withdrawal mandatory when (1) consideration of federal law outside of the Bankruptcy Code is necessary to resolve the case or proceeding, and (2) such consideration of federal law outside the Bankruptcy Code is "substantial and material." *In re Continental Airlines,* 138 B.R. at 444–45; *In re Columbia Gas System, Inc.,* 134 B.R. 808, 810 (D.Del.1991); *accord Schlein v. Golub,* 188 B.R. 13, 14 (E.D.Pa. 1995); *United States v. Wood,* 161 B.R. 17, 19 (D.N.J.1993). Further, the district has distinguished between meaningful "consideration" of federal law outside the Bankruptcy Code, and its "simple application"; when only a "simple application" of well-settled law is required, withdrawal is not mandatory. *Columbia Gas Sys.,* 134 B.R. at 811.

Homeland has alleged a count of federal common law right to restitution, a breach of contract claim, and seeks declaratory and injunctive relief. *See* A.C. at ¶¶ 19–31, 35–37. In their answer to the initial complaint, the Trustees counterclaimed under a provision of ERISA, 29 U.S.C. § 1132(g), which governs the award of unpaid contributions. According to the Trustees, these claims brim with a farrago of ERISA issues. The Trustees enumerate these ERISA issues as involving:

(1) ERISA's preemption section.

(2) ERISA's statutory requirements regarding the Trustees' fiduciary duties.

(3) ERISA provisions governing contributions, delinquencies, and use of Plan assets.

(4) Language in the Plan which tracks case law interpreting ERISA and requiring deference to Plan determinations made by the Trustees.

(5) The applicability of federal common law to the underlying dispute between the parties.

The Court will address these issues, although not in the discrete manner in which the Trustees have presented them, and whether they mandate withdrawal of the adversary action from the Bankruptcy Court.

29 U.S.C. § 1144(a) states ERISA provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." In the Trustees' view, this section ensures that a court considering the adversary action will find itself knee-deep in an ERISA-preemption quagmire.

Homeland has asserted no statutory state law claims; nor has it alleged a cause of action arising under a specific provision of the ERISA statute. It has asserted two common law claims—(1) a federal common law action for restitution, and (2) a breach of contract action. The restitution claim is grounded in a breach of fiduciary duty imposed by ERISA. *See* A.C. at ¶ 20.

■ Thus, although Homeland has not brought suit under ERISA, it will argue federal common law can be used to fill gaps in the coverage of the ERISA statute and provide a cause of action for the return of its contributions to the South Central Plan. Congress has indeed authorized the federal courts to create common law concerning employee benefit plans under ERISA. *Van*

*Orman v. American Ins. Co.*, 680 F.2d 301, 311 (3d Cir.1982); *Airco Indus. Gases v. Teamsters Health and Welfare Pension Fund of Phila. & Vicinity ("Airco I")*, 618 F.Supp. 943, 950 (D.Del.1985). But a common law right can be recognized only where the statutory scheme is inadequate and where the right is "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Van Orman*, 680 F.2d at 312 (citation omitted); *see also UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America*, 998 F.2d 509, 512 n. 10 (7th Cir.1993); *Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters and Employers Pension Fund ("Colteryahn I")*, 847 F.2d 113, 121 (3d Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *Airco I*, 618 F.Supp. at 950–51.

Several courts within the Third Circuit, including this Court, have recognized an employer's equitable action against a fund for the recovery of contributions in some circumstances, despite the lack of an express statutory authorization for a private cause of action. *See Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1057 (3d Cir.1989) (allowing recovery of contributions erroneously paid to pension funds due to mistake of fact or law); *Colteryahn I*, 847 F.2d at 115 (holding defrauded employer has cause of action for return of any sums fraudulently assessed by pension plan); *Airco I*, 618 F.Supp. at 950–51 (recognizing employer's claim for unjust enrichment under federal common law). There are considerations that extend beyond the mere recognition of an employer's right to sue, however. For example, the Third Circuit Court of Appeals has held an employer may not have an "automatic right of restitution," even if that employer has been wronged. *Plucinski*, 875 F.2d at 1057. Instead, the fiscal integrity of the fund must be weighed when deciding whether the employer can recover its contributions. *Id.* at 1057–58.

The discrete analytical steps in resolving Homeland's restitution claim—(1) determining whether a restitution claim such as Homeland's is needed to fill in the interstices of the ERISA statute, and (2) concluding if an award is appropriate in light of possible harm to the fund beneficiaries—could no doubt be competently undertaken by the Bankruptcy Court. Congress intended the federal district courts to grapple with these issues, however, which implicate the ERISA statute and its jurisprudence. *Steiner Elec. Co. v. Central States, Southeast and Southwest Areas Pension Fund*, No. 95–C–687, 1995 WL 399517, at *6 (N.D.Ill. June 29, 1995).

Further, Homeland's breach of contract claim produces additional ERISA issues suited for resolution by a district court. The Trustees have interposed ERISA preemption as an affirmative defense to the contract claim in its initial answer, and will surely raise it in its answer to the amended complaint. Several courts have expressed skepticism that an employer can bring a common law breach of contract claim against ERISA fund trustees—either because such a claim is preempted or because when other equitable avenues of relief are available, a breach of contract claim does not exist in the federal common law of ERISA plans. *Colteryahn I*, 847 F.2d at 124 (explaining "[s]ince ... allegations made in Colteryahn's federal counts [common law fraud and misrepresentation] are substantially similar to the allegations made in Colteryahn's state law claims, we express serious doubt whether, consistent with the broad preemptive nature of ERISA, we could allow Colteryahn to proceed" with its breach of contract claim); *Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters and Employers Pension Fund ("Colteryahn II")*, 785 F.Supp. 536, 543 (W.D.Pa.1992) (preempting breach of contract claim); *Board of Trustees of Cedar Rapids Pediatric Clinic, P.A., Pension Plan v. Continental Assurance Co.*, 690 F.Supp. 792, 796 (W.D.Ark.1988) (holding employer's "common law claims based on breach of contract and negligence state a claim under ERISA for breach of fiduciary duty."). Clearly, then, the issues surrounding the viability of Homeland's common law contract claim are far from settled.

Another thorny issue concerns the appropriate legal principles a court should apply to

the actions of the Trustees. The legal standards could depend on the predicate legal theory of recovery. In its complaint, Homeland asserts the Trustees violated a fiduciary duty imposed by ERISA. A.C. at ¶ 20. Specifically, Homeland alleges a violation of 29 U.S.C. § 1104(a)(1)(D), which obliges a fiduciary to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." According to Homeland, the Trustees did not act in accordance with the documents of the South Central Plan when they assessed further premiums when Homeland withdrew from the Plan. A.C. at ¶ 20.

The Trustees pounce on Homeland's reliance on this ERISA provision. They argue the Plan documents contain so-called "discretionary language," as defined in ERISA case law, see *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), which serves to immunize a plan administrator from suit unless his actions were "arbitrary and capricious." *Id.* This "discretionary language" case law comports with an earlier holding by this Court, interpreting federal common law developed under the ERISA framework, that "[t]he arbitrary and capricious standard applied to review the trustee's act will determine whether, under the law of restitution, the retention of any or all excess contributions by a fund is 'unjust.' " *Airco Indus. Gases, Inc. v. Teamsters Pension Trust Fund of Phila. & Vicinity* ("*Airco II* "), 668 F.Supp. 893, 902 (D.Del.1987). The Trustees would obviously prefer any decisionmaker to apply the "arbitrary and capricious" standard to their actions when adjudicating Homeland's claims. Of course, a court would have to determine if such "discretionary language" is present and if it is effective—both issues concerning ERISA and its concomitant case law.

On the other side of the coin, if a breach of contract action is recognized, or if the Trustees bring a counterclaim for delinquent contributions as they did in their answer to

Homeland's initial complaint,[4] a different legal standard may apply. Homeland has broadly hinted the adversary action should be governed by traditional, common law contract principles. D.I. 5 at 11–12. Although it has not done so here, Homeland will no doubt point to case law regarding ERISA enforcement actions brought by multiemployer funds against employers for delinquent contributions.

■ Pursuant to 29 U.S.C. § 1145 ("section 1145"), multiemployer funds can enforce the writings of Plan documents, "according to their terms." *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731 (7th Cir.1996) (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir.1989) (en banc)). In an ERISA action brought pursuant to section 1145, the "federal common law rules of interpretation" apply to contracts, so long as a federal labor law does not provide a conflicting rule. *Id.* See also *Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40–41 (3d Cir. 1991) (applying general principles of contract interpretation when faced with ERISA enforcement action brought by a fund pursuant to section 1145). If this standard of scrutiny is adopted, a court might interpret the South Central Plan documents as if they were any other private contract, and with considerably less deference to the Plan Trustees than the Trustees would no doubt prefer.

Mercifully, the Court need not wade through these issues now; the Court is merely pinpointing potential ERISA issues, not addressing or deciding them in any meaningful fashion. Suffice to say this case involves meaningful "consideration" of federal law outside the Bankruptcy Code and more than the "simple application" of well-settled law.

The lynchpin of Homeland's argument against withdrawal is *In re Continental Airlines*, 138 B.R. 442 (D.Del. 1992). In *Continental Airlines*, the court dismissed a pension fund administrator's argument that withdrawal of a proceeding was mandatory

---

**4.** As noted earlier, the Trustees have not answered the amended complaint; in response, they filed a motion to withdraw the reference.

because the administrator pursued an ERISA remedy against the debtor. The administrator and the debtor had entered into a settlement agreement which purported to release the debtor from any ERISA liability for a related entity's pension plans. *Id.* at 446. Only well-settled principles of contract law were required to determine the validity of the settlement agreement, the court held, and the Bankruptcy Court was perfectly capable of making that determination. *Id.* at 446.

Further, "[w]hile ERISA's statutory provisions may be incorporated in some of the Settlement Agreement's terms," the *Continental* court reasoned, "ERISA does not provide a framework to judge how or whether the Settlement Agreement applies." *Id.* at 447. Finally, the *Continental* court noted ERISA gave the administrator authority to enter into the settlement agreement. *Id.* Although the court conceded this "question bears a close relationship to ERISA's statutory scheme," it saw "no reason to consider the issue." *Id.* Accordingly, it denied the administrator's motion to withdraw the reference from the Bankruptcy Court. *Id.*

Homeland has skillfully draped the well-reasoned *Continental Airlines* opinion around this motion, tailoring it to the circumstances of its adversary action against the Trustees. Homeland compares the South Central Plan documents to the settlement agreement in *Continental Airlines;* in both, ERISA merely provides a framework, argues Homeland, and does not require any application more complex than that of "traditional contract principles," *id.* at 446.

It may be that disposition of the adversary action will hinge on traditional contract principles. But while artful decoration may obscure the significant differences between the motion to withdraw in *Continental Airlines* and the motion in this case, it will not eliminate them. *Continental Airlines* involved the interpretation of a collateral agreement with a "close relationship to ERISA's statutory scheme" which ultimately obviated the need for a court to reach any ERISA issues. Homeland's adversary action, on the other hand, involves the interpretation of the Plan documents themselves; their claims, and the

Trustees' possible counterclaims, thereby implicating the ERISA issues rehearsed earlier in this opinion.

Further, unlike in *Continental Airlines,* ERISA provides more than mere framework for the adversary action. Homeland's restitution claim is grounded in a breach of an ERISA-created duty, and any common law claim must be found in the interstices of ERISA. An action by the Trustees for delinquent contributions would be pursuant to an ERISA provision.

Significantly, this case does not implicate the delicate balance of debtors' and creditors' rights under the Bankruptcy Code any more than an unrelated lawsuit would. In *Continental Airlines,* the administrator was a bankruptcy claimant; the Trustees, on the other hand, are not claimants in Homeland's Chapter 11 proceedings. Homeland's plan for reorganization has already been confirmed. Although Homeland asserts the Trustees' allegedly wrongful conduct will substantially impede Homeland's efforts to implement the reorganization plan, the same could be said for any lawsuit which exposes Homeland to pecuniary liability. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir.1991) (considering whether bankruptcy court has jurisdiction to decide statute of limitations defenses in personal injury suits against debtor and propounding "[o]nce the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval.... It may not come running to the bankruptcy judge every time something unpleasant happens.").

Thus, *Continental Airlines* is dissimilar from this adversary action, and does not dispel the conclusion that a substantial and material consideration of federal law outside the Bankruptcy Code is necessary to resolve the adversary proceeding between Homeland and the Trustees. Withdrawal of the adversary proceeding is mandatory under section 157(d).

**B. Permissive Withdrawal**

■ The first sentence of section 157(d) allows a district court to withdraw a refer-

ence for a Chapter 11 proceeding "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Even if mandatory withdrawal were inappropriate, there is ample cause to withdraw the adversary action under the permissive withdrawal provision.

The Third Circuit Court of Appeals has suggested district courts consider the following factors in determining whether cause has been shown: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir.1990) (quoting *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)); *accord Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D.Del.1989). When the adversary action is examined in accordance with the foregoing factors, it is apparent the reference to the Bankruptcy Court should be withdrawn.

Significantly, Homeland's reorganization plan has already been confirmed, and the plan became effective on August 2, 1996. The Bankruptcy Court has already successfully presided over the following: (1) approval of a feasible proposal by Homeland on how to compromise and satisfy prepetition obligations, (2) acceptance of that proposal by creditors, and (3) the discharge of all claims against Homeland. Thus, although the bankruptcy case is still officially "open"—ostensibly to resolve a few remaining core matters—the Bankruptcy Court has fulfilled its *raison d'être*. This adversary action does not implicate the expertise of the Bankruptcy Court in juggling creditors' or debtors' rights or wading through the complexities of the Bankruptcy Code; rather, it is litigation that although brought by a party in bankruptcy proceedings, could just as well have been initiated in the district court.

Keeping the adversary action in Bankruptcy Court will not substantially promote uniformity in bankruptcy administration or the economical use of debtors' and creditors' resources, nor will it expedite a bankruptcy process that is, for all intents and purposes,

resolved. Withdrawal of the reference would also reduce forum shopping. Without withdrawal, Homeland would be able to keep every lawsuit it brings in Bankruptcy Court until the reorganization plan is fully completed some years hence; after all, Homeland at one time was a debtor-in-possession and its bankruptcy case has not been officially "closed." *See Pettibone Corp.*, 935 F.2d at 121 ("Only a belief that bankruptcy is forever could produce a case such as this."). Congress did not intend the Bankruptcy Courts, which have sharpened their expertise in a specialized body of law, to be flooded with non-chapter 11 disputes that have such a tenuous relationship to a bankruptcy proceeding. *Cf. id.* at 123; *Pruitt*, 910 F.2d at 1168 (recognizing "statutory objectives of utilizing the expertise of bankruptcy judges") (quoting *In re Powelson*, 878 F.2d 976, 983 (7th Cir.1989)). Accordingly, Homeland has shown sufficient cause to order permissive withdrawal under section 157(d) of the adversary action from the reference of the Bankruptcy Court.